# Hartman *versus* Ogborn.

1. A married woman cannot encumber her separate estate for the debt of
another.

2. Judgments of courts having jurisdiction of the matter, cannot be inquired
into in a collateral proceeding, except for fraud in obtaining the judgment.

3. The Act of 1705 does not fix the effect of two *nihils*, but in practice they
are considered equivalent to a garnishment or a return of " scire feci."

4. A scire facias on a mortgage, under the Act of 1705, is no further a pro-
ceeding *in personam* than as it is directed against the mortgagor and others
claiming under him, which entitles them to the notice prescribed by the
act (which two nihils are) ; for the rest it is a proceeding *in rem* to foreclose
the equity of redemption, and convert the pledge into money.

5. The effect of the writ, when followed out to a sale, is to extinguish the
equity of redemption, and transfer the estate to the purchaser as fully as it
existed in the mortgagor before the mortgage.

6. The transfer is made by the judgment and sale thereon, and not by the
mortgage.

7. After a scire facias on a mortgage has ripened into a judgment, the mort-
gage is merged in it, and even if null and void, is no longer open to attack.

8. A married woman executed a mortgage in her maiden name ; scire
faciases on it were issued against her in that name, on which judgment was
recovered after two nihils, and the land sold by the sheriff.    *Held*, that the
purchaser took a good title, and the validity of the mortgage could not be
inquired into in an ejectment for the mortgaged premises.

January 18th 1867.    Before WOODWARD, C. J., THOMPSON,
READ and AGNEW, JJ.    STRONG, J., at Nisi Prius.

Error to the District Court of *Philadelphia.*

Ejectment by John Hartman and Mary Ann his wife, late
Coleman, in her right, against Aaron Ogborn, Robert F. Williams,
and Thomas Woolston.

The writ issued to March Term 1865.

Mary Ann Coleman was married to John Hartman on the 1st

[Hartman *v.* Ogborn.]

day of February 1858, and on the 5th day of the same month, in her maiden name, Coleman, executed a mortgage to James S. Keen on the premises in dispute, to secure the payment of $2100. The mortgage was recorded the same day. On the 16th day of the same month James S. Keen assigned the mortgage to Abraham Coates and Joseph S. Keen.

To July Term 1862 of the District Court the assignees issued a scire facias on the mortgage against " Mary Ann Coleman, with notice to terre-tenants," which was returned "*nihil*." To August Term of same year the same plaintiffs issued an alias scire facias on the mortgage as before, which was also returned "*nihil*." On the 5th of September 1859 judgment was taken " for want of appearance on two returns of *nihil habet*," and the next day the damages were assessed at $2247. On this judgment a levari facias issued, the premises were sold to John W. Woolston for $200, and the sheriff's deed acknowledged October 29th 1859.

The purchaser, on the 9th of February 1863, conveyed to Thomas F. Williams, one of the defendants.

On the trial it was admitted that the plaintiffs had possession under a title in Mrs. Hartman at the execution of the mortgage. A disclaimer was entered as to Thomas L. Woolston, and the writ showed that the other defendants were in possession at the commencement of the action.

The court below (Hare, A. J.) directed the jury to find for the plaintiffs, reserving the point as to the defendant's title for the court in banc.

The court afterwards gave judgment for the defendant on the reserved point.

So entering judgment was assigned for error by the plaintiffs, who removed the case into the Supreme Court.

*John A. Owens*, for plaintiffs in error.—The mortgage being executed by a married woman, is void: Keen *v.* Coleman, 3 Wright 299. The defendant's title depends upon the mortgage, which being void, the title must fall: Manby *v.* Scott, 1 Siderfin 120 ; Tracy *v.* Sutton, 2 Cro. Jac. 640 ; 6 Mod. Rep. 311 ; Reed *v.* Jewson, 4 Term R. 362 ; Dorrance *v.* Scott, 3 Wh. 309 ; Caldwell *v.* Walters, 6 Harris 79 ; Glyde *v.* Kiester, 8 Casey 85 ; Enue *v.* Clark, 2 Barr 234 ; Bears' Adr. *v.* Bears, 9 Casey 525 ; Baker *v.* Lukens, 11 Id. 146 ; Stoops *v.* Blackford, 3 Id. 213 ; Richards *v.* McClellan, 5 Id. 385 ; Keen *v.* Coleman, 3 Wright 299 ; Glidden *v.* Strupler, 2 P. F. Smith 400.

The Act of 1705, § 9, Purd. 329, pl. 115, 1 Sm. L. 69, was never intended to operate upon the *substance* of a title, but was merely meant to give repose to controversies respecting technical deficiencies: Caldwell *v.* Walters, 6 Harris 79; Bruner's Appeal, 11 Wright 68; Petit *v.* Fritz, Executors, 9 Casey 118.

.[Hartman *v.* Ogborn.]

*C. E. Lex*, for defendants in error.—The Act of 1705 protects in all cases except where the sale is made under void process : Burd *v.* Dansdale, 2 Binn. 80 ; Hance's Appeal, 1 Barr 408 ; Caldwell *v.* Walters, 6 Harris 79 ; Keen *v.* Coleman, 3 Wright 299.

The opinion of the court was delivered, March 14th 1867, by

WOODWARD, C. J.—Mrs. Hartman executed a bond and mortgage in her maiden name of Mary Ann Coleman, five days after her marriage to Hartman, and that these instruments were void is not to be questioned. · The disability of a married woman to encumber her separate estate for the debt of another has been declared in many cases, and was repeated in respect of this very bond in Keen *v.* Coleman, 3 Wright 299.

But the question upon the record has respect to the *judgment* upon the mortgage, rather than to the mortgage itself. The judgment was founded upon two *nihils*, returned to two scire faciases, an original and an alias writ, which issued against the mortgagor and terre-tenants. A levari facias was then issued upon the judgment, and the premises were sold and conveyed by the sheriff, not to the mortgagee, but to a purchaser who had no notice that the mortgagor was a married woman. Neither the judgment nor the proceedings under it have been questioned by a writ of error, a motion to open or set them aside, or in any other manner whatever, and the only question upon the trial of this cause was whether they could be impeached collaterally.

Not only is it a general doctrine of law that the judgments of courts having jurisdiction of the matter cannot be inquired into in a collateral proceeding, except for fraud in the manner of obtaining the judgment, but several points have been ruled that are specially applicable to judgments upon scire faciases sur mortgage. For example, in Nace *v.* Hollenback, 1 S. & R. 340, the assignee of a mortgage having obtained judgment against the mortgagor and terre-tenant in a suit of scire facias, and afterwards become the purchaser of the premises at the sheriff's sale, brought ejectment against a terre-tenant, who offered on the trial to prove that the mortgage had been satisfied before the judgment, but his evidence was held to be inadmissible. In Blythe *v.* Richards, 10 S. & R. 261, which was ejectment by a mortgagee who had purchased at the sheriff's sale, the defendant was not permitted to show that the scire facias had not been served, nor that the mortgage-money, for which judgment had been recovered by default, had been paid.

In Culley *v.* Latimer, 5 S. & R. 211, we have the point directly ruled that the validity of a judgment founded upon two *nihils* to successive scire faciases sur mortgage cannot be impeached in a subsequent ejectment. The offer there was to show that the mortgagor was in possession of the premises when the scire faciases

[Hartman v. Ogborn.]

issued, and therefore was entitled to personal service; but, said this court, if the judgment of the Court of Common Pleas was erroneous it should have been reversed on a writ of error, but remaining in full force, this court cannot now inquire into any errors which are alleged to exist. The Act of 1705, which gives the scire facias, does not fix the effect of two *nihils*, but in practice they are considered equivalent to a garnishment, or a return of scire feci by the sheriff; and in Warder *v.* Tainter, 4 Watts 270, a mortgagor, dead before the first scire facias issued, was held to be alive for the purposes of the judgment, and well served after two *nihils* and judgment thereupon.

These cases are all striking illustrations of the conclusive effect of the proceedings upon mortgages under the Act of 1705. The scire facias is no further a proceeding *in personam* than as it is directed against the mortgagor, or others claiming under him, which entitles them to the notice prescribed by the Act of Assembly, which two *nihils* are, and for the rest, it is a proceeding *in rem* to foreclose the equity of redemption, and to convert the pledge into money. And the effect of the proceeding, says the act, shall be, that the purchaser "shall and may hold and enjoy the lands with their appurtenances for such estate or estates as they were sold, clearly discharged and freed from all equity and benefit of redemption, and all other encumbrances made or suffered by the mortgagors, their heirs or assigns." The writ must issue against the mortgagor, his heirs, executors or administrators, and its effect, when followed out to a sale, is to extinguish the equity of redemption, and to transfer the estate to the purchaser as fully as it existed in the mortgagor at the date of the mortgage. And this transfer, be it observed, is made by the *judgment* and the *sale* thereon, not by virtue of the mortgage. What avails the objection, then, that the mortgage was null and void, or for any reason was inadequate as an instrument of transfer? The inadequacy of the mortgage might well have been urged against the suit by scire facias, but after that has been permitted to ripen into an unquestioned judgment, the mortgage is merged in it, and is no longer open to attack.

These proceedings upon mortgages under the Act of 1705, are to be distinguished from judgments on bond against married women, which was the case of Dorrance *v.* Scott, 3 Wh. 309, and of Caldwell *v.* Walters, 6 Harris 79; and also from cases of which Knox *v.* Flack, 10 Harris 337, is a type.

These were proceedings purely *in personam*, where the disability appeared of record, and in Caldwell *v.* Walters, the purchaser had notice of the disability, but here the proceeding was principally *in rem*, and the record imputed no disability of the only person sued. Mary Ann Coleman was the mortgagor, and the purchaser had no notice that she was a married woman when

[Hartman *v.* Ogborn.]

she made the mortgage. She was properly sued because she was mortgagor; the process was according to the Act of Assembly, and the effect of the two *nihils* was to subject her estate to sheriff's sale. As to this record she is Mary Ann Coleman still, unmarried and *sui juris*, just as the dead mortgagor in Tainter *v.* Warder, was made alive for the purposes of that suit. A writ of error to the judgment on the mortgage would have made the death in the one instance and the marriage in the other an available defect, but without that the judgment stands as it was rendered.

The judgment is affirmed.