**In the Matter of Dean SKELLY, Jr. Lucy E. Skelly, Debtors/Appellants.**

**Civ. A. No. 83–435 MMS.**

United States District Court, D. Delaware.

April 3, 1984.

---

Eric M. Doroshow, Wilmington, Del., for debtors/appellants.

Robert V. Huber, Wilmington, Del., for Ninth Ward Sav. and Loan Ass'n.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This Bankruptcy appeal presents the issue of whether, after entry of default judgment by a Delaware state court on a writ of scire facias (or "sci fa") sur mortgage, a court may confirm a Chapter 13 plan which envisions paying the mortgagee less than the amount of his judgment.

The pertinent facts are simple and undisputed. Debtors for some time in 1982 failed to make payments on a 30-year mortgage covering their private residence. On August 10, 1982, Ninth Ward Savings and Loan Association ("Ninth Ward" or "mortgagee") accelerated the mortgage. On October 4, 1982, the mortgagee filed a complaint sci fa sur mortgage against debtors and took default judgment (the "judgment" or "judgment of foreclosure") against them on November 23. Thereafter Ninth Ward commenced execution by writ of levari facias (or "lev fa"), publicly advertising a sheriff's sale for February 8, 1983. On the day

before the scheduled sale debtors filed a Chapter 13 petition, thereby obtaining an automatic stay of the sheriff's sale under 11 U.S.C. § 362(a).

The debtors' proposed Chapter 13 plan provided for payment to the trustee of arrearages on the mortgage during the life of the plan and for payment of current mortgage installments directly to the mortgagee. The plan did not provide for payment of the judgment of foreclosure or, for that matter, for payment of the accelerated mortgage balance. Ninth Ward objected to confirmation of the plan because of this perceived deficiency. The Bankruptcy Court, relying on its prior decision in *In re White*, 22 B.R. 542 (Bkrtcy.D.Del.1982), denied confirmation of the plan from the bench, stating that "there can be no cure and reinstatement of a mortgage after a judgment of foreclosure has been entered because under Delaware law the mortgage is merged in that judgment." (Doc. 17 at 8). The denial of confirmation was appealed to this Court.[1] Debtors argue on appeal that their default on the mortgage may be cured, and the mortgage reinstated, under the rehabilitative provisions of Chapter 13. For the reasons which follow the Bankruptcy Court's denial of confirmation will be affirmed.

### I. *Discussion*

■ The nature of a creditor's property rights in bankruptcy is defined by state law, not federal law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). Thus, although the federal bankruptcy laws may alter a creditor's state law power to enforce his property claims, the dimension of his claims are initially a question of state law. Before discussing the cure provisions of Chapter 13 it is therefore useful to have an understanding of the law of mortgages and mortgage foreclosure under Delaware law.

---

1. Oral argument was held on October 25, 1983. Thereafter, the parties engaged in settlement discussions. On January 21, 1984, the parties advised the Court that settlement efforts had failed and requested that the Court determine the matter.

## A. *Delaware Law*

Delaware is a lien state, not a title state. *See Fox v. Wharton,* 5 Del.Ch. 200 (1878). As a consequence, a mortgage in Delaware serves merely as security for a debt; it does not itself represent a debt. In addition, unlike many states, in Delaware the equity of redemption in a mortgagor is nothing more than "the title to the mortgaged land, with the right to redeem it from the encumbrance of the mortgage." 2 *Woolley on Delaware Practice* § 1353, at 915 (1906) (hereinafter cited as "*Woolley*").[2] Thus, after an execution sale a mortgagor may not redeem his property because the sale discharges the land from all equity of redemption. 2 *Woolley* § 1375, at 928.

This particular foreclosure action was begun in the Superior Court by a writ of scire facias sur mortgage[3] pursuant to 10 *Del.C.* § 5061.[4] A judgment of sci fa sur mortgage, "being based upon the record of the mortgage, assumes the character of the lien of the mortgage, being specific in its operation, and in effect is a judgment of condemnation." 2 *Woolley* § 1373, at 927. Once a judgment sci fa sur mortgage is obtained, a mortgagee may execute his judgment by writ of levari facias. 10 *Del.C.* § 5063 provides that a "definitive judgment ... as well as all other judgments ... be given upon such scire facias ... and that plaintiff have execution by levari facias directed to the proper official." As explained by *Woolley,* "[t]he judgment of the sci. fa. on the mortgage is a judgment of condemnation of the mortgaged premises, and the sale under a lev. fac. is the execution of that judgment of condemnation...." 2 *Woolley* § 1382, at 930.

■ The Bankruptcy Court held that under Delaware law the debtor's foreclosure action "merged" the mortgage into the judgment. Although the Bankruptcy Court's holding is not necessarily inconsistent with the above discussion of Delaware law, this Court has found no case law or commentary directly supporting the "merger" concept.[5] This question of merger

---

**2.** *Woolley* is the best if not the only work of its type in Delaware. It is frequently cited as authority by the Delaware Supreme Court. *See e.g. Monroe Park v. Metropolitan Life Ins. Co.,* 457 A.2d 734 (Del.1983).

**3.** In Delaware, a mortgagee may also proceed in Chancery Court to foreclose a mortgage. *See Monroe Park v. Metropolitan Life Ins. Co.,* 457 A.2d 734 (Del.1983); *Woolley* § 1355.

**4.** 10 *Del.C.* § 5061 provides:

Upon breach of the condition of a mortgage of real estate by nonpayment of the mortgage money, or nonperformance of the conditions stipulated in such mortgage, at the times and in the manner therein provided, the mortgagee, his heirs, executors, administrators, or assigns, may, at any time after the last day whereon the mortgage money ought to be paid, or other conditions performed, sue out of the Superior Court of the county, wherein the mortgaged premises are situated, a writ of scire facias upon such mortgage directed to the sheriff of the county, and commanding him to make known to the mortgagor, his heirs, executors, or administrators, that he, or they, appear before the Court to show cause, if there is any, wherefore the mortgaged premises ought not to be seized and taken in execution for payment of the mortgage money, with interest, or to satisfy the damages which the plaintiff in such scire facias shall,

upon the record, suggest for the nonperformance of the conditions.

While there has been some modernization of language from the first colonial Delaware statute authorizing foreclosure by sci fa, 1 Del.L. ch. 46, § 5, the current § 5061 closely tracks the colonial version as well as the version in effect at the time of Woolley's writing. *See* Del.Revised Code, ch. 111, § 55 (1852). *Woolley* described scire facias as follows:

A *scire facias* is not an original writ, but is a judicial writ founded on some matter of record, as a suit, judgment, recognizance, or mortgage, on which it lies either to enforce execution or for some other purpose, appropriate and incident to the record.

2 *Woolley* § 1309, at 889. According to *Woolley,* a complaint on a sci fa sur mortgage puts in issue whether the plaintiff owes a debt which is in default secured by a mortgage lien on property specifically described. *See* 2 *Woolley* § 1358, at 918–19.

**5.** The Delaware Supreme Court, citing *Woolley* with approval, has noted that the colonial Delaware statute "was modeled after a Pennsylvania statute enacted in 1705." *Monroe Park v. Metropolitan Life Ins. Co.,* 457 A.2d 734, 735 n. 4 (Del.1983). Analogy to early Pennsylvania law, however, does not help resolve the merger question. An early Pennsylvania case held that the lien of a mortgage is not merged in a judgment on a sci fa where the lien of the judgment has not been timely revived. *Helmbold v. Man,* 4

need not, however, be decided. Even were there no merger, it is incontrovertible that under Delaware law the judgment on the sci fa sur mortgage created a lien on the mortgaged premises for the accelerated amount of the mortgage in the amount of the default judgment. Thus, even if a mortgage still exists under Delaware law, an independent lien and judgment also exist. For purposes of this opinion, the Court will accept debtors' position and assume that under Delaware law there was no merger of the mortgage into the judgment.

### B. *Bankruptcy Code*

■ Against this background of Delaware law the Court turns its attention to Chapter 13 of the Bankruptcy Code. The relevant provisions of Chapter 13 are found in sections 1322(b)(2), (3) and (5) which state:

(b) ... the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ....

11 U.S.C. § 1322(b).

The case law interpreting these sections is in hopeless disarray. A recent survey states well this confusion in the existing case law. The bankruptcy court in *In re Gwinn*, 34 B.R. 936 (Bkrtcy.S.D.Ohio 1983), explained:

An examination of the reported cases indicates that five basic positions have emerged. A small minority of courts have held that deceleration/reinstitution is not available once the mortgagee has exercised his contractual right to accelerate, regardless of whether or not the mortgagee has obtained a judgment. See *In re Soderlund* [18 B.R. 12] (Dist.Ct. [(S.D.Ohio 1981)]), *supra; Matter of Allen*, 17 B.R. 119 (Bkrtcy.N. D.Ohio 1981); *In re La Paglia*, 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981).

Another, more sizeable group of cases have held that while deceleration is possible prior to judgment, it is no longer available once the mortgagee has obtained a judgment on the mortgage note. See *In re Anderson* [16 B.R. 697, (Bkrtcy.S.D.Ohio 1982)], *supra; In re White*, 22 B.R. 542 (Bkrtcy.D.Del.1982); *In re Mattocks*, 15 B.R. 379 (Bkrtcy.E.D. N.Y.1981); *In re Maiorino*, 15 B.R. 254 (Bkrtcy.D.Conn.1981); *In re Jenkins*, 14 B.R. 748 (Bkrtcy.N.D.Ill.1981); *In re Land*, 14 B.R. 132 (Bkrtcy.N.D.Ohio 1981); *Matter of Wilson*, 11 B.R. 986 (Bkrtcy.S.D.N.Y.1981); *In re Pearson*, 10 B.R. 189 (Bkrtcy.E.D.N.Y.1981); *In re Canady*, 9 B.R. 428 (Bkrtcy.D.Conn. 1981); *In re Britton*, 35 B.R. 373 (N.D. Ind.1982). While this is a more widely held view than the *per se* prohibition espoused by the first group, it is still the minority view and has had only one recent convert. *In re Clark*, C.C.H. Bankr.Serv. ¶ 69,341, 32 B.R. 711 [(W.D. Wis.1983)].

The third approach likewise allows deceleration and reinstitution, but does not speak to what impact, if any, a judgment would have on the availability of this option. See *In re Morrison*, [35 B.R. 996 (S.D.Ohio 1983)], *supra; In re Briggs*, 25 B.R. 317 (D.N.D.1982); *In re Davis*, 16 B.R. 473 (Dist.Ct.D.Kan.1981); *In re Cheeks*, 24 B.R. 477 (Bkrtcy.M.D.Ala. 1982); *Matter of Wilder*, 22 B.R. 294

Whart. 410 (1839). However, in *Hartman v. Ogborn*, 54 Pa. 120 (1867), the court held that after the sci fa sur mortgage has ripened into a judgment, "the mortgage is merged in it." *Id.,*

at 123. Later Pennsylvania cases appear to follow the *Hartman v. Ogborn* rule. *See Kennedy v. Baker*, 159 Pa. 146, 28 A. 252 (1893); *Murray v. Weigle*, 118 Pa. 159, 11 A. 781 (1888).

(Bkrtcy.M.D.Ga.1982); *In re Rippe,* 14 B.R. 367 (Bkrtcy.S.D.Fla.1981); *First Investment Co. v. Custer,* 18 B.R. 842 (Bkrtcy.S.D.Ohio 1982); *In re Sapp,* 11 B.R. 188 (Bkrtcy.S.D.Ohio 1981); *In re Beckman,* 9 B.R. 193 (Bkrtcy.N.D.Iowa 1981). This view is supported by several District Courts and would seem to be the overwhelming majority view.

The fourth view holds that deceleration and reinstitution are possible even after the mortgagee has obtained a judgment on the accelerated mortgage note. *In re Taddeo,* 685 F.2d 24 (2d Cir.1982); *In re Acevedo,* 26 B.R. 994 (E.D.N.Y.1982); *In re Mueller,* 18 B.R. 851 (Bkrtcy.W.D. Ark.1982); *In re Young,* 22 B.R. 620 (Bkrtcy.N.D.Ill.1982); *In re Hubbard,* 23 B.R. 671 (Bkrtcy.S.D.Ohio 1982); *In re McSorley,* 24 B.R. 795 (Bkrtcy.N.J.1982); *In re Tuchman,* 29 B.R. 39 (Bkrtcy.S.D. N.Y.1983); *In re Hardin,* 16 B.R. 810 (Bkrtcy.N.D.Tex.1982); *In re Taylor,* 21 B.R. 179 (Bkrtcy.W.D.Mo.1982); *In re Smith,* 19 B.R. 592 (Bkrtcy.N.D.Ca.1982); *In re McCann,* 27 B.R. 678 (Bkrtcy.S.D. Ohio 1982). This seems to be a rapidly growing view and has been adopted by more appellate level courts than have any·of the other views.

The fifth view is perhaps the most adventurous of all. It holds that deceleration and reinstitution are available even after the foreclosure sale, as long as the state redemption period has not expired by the time the debtor files his bankruptcy petition. See *In re Chambers,* 27 B.R. 687 (Bkrtcy.S.D.Fla.1983); *In re Kokkinis,* 22 B.R. 353 (Bkrtcy.N.D.Ill. 1982); *In re Thompson,* 17 B.R. 748 (Bkrtcy.W.D.Mich.1982); *In re Gooden,* 21 B.R. 456 (Bkrtcy.N.D.Ga.1982); *In re Ivory,* 32 B.R. 788, 10 B.C.D. 1327 (Bkrtcy.D.Or.1983).

*Id.* at 939–40 (footnotes omitted).[6] The courts are, in particular, divided on the issue before this Court: whether there can be deceleration and reinstitution of a mortgage after entry of judgment of foreclosure but before sale.[7] *Compare In re re Acevedo,* 26 B.R. 994 (E.D.N.Y.1982) (reinstitution and deceleration permitted); *In re McSorley,* 24 B.R. 795 (Bkrtcy.D.N.J. 1982) (same); *and In re Taylor,* 21 B.R. 179 (Bkrtcy.W.D.Mo.1982) (same); *with In re Clark,* 32 B.R. 711 (D.C.W.D.Wis.1983) (reinstitution and deceleration not permitted); *In re Mattocks,* 15 B.R. 379 (Bkrtcy. E.D.N.Y.1981) (same); *and In re Maiorino,* 15 B.R. 254 (Bkrtcy.D.Conn.1981).

The debtors have not made clear whether they seek "modification" of Ninth Ward's judgment under section 1322(b)(2) or the "curing" of their default and maintenance of mortgage payments under sections 1322(b)(3) and (b)(5). For reasons which are set out below, debtors cannot prevail under any of those subsections.

The section 1322(b)(2) argument is the easiest to dismiss. Section 1322(b)(2), unlike sections 1322(b)(3) and (b)(5), does not allow for the curing of a default. Section 1322(b)(2) does permit modification of secured claims, but any plan of modification must, under section 1322(c), provide for payments over a period of no longer than five years.[8] Debtors' proposed plan does not contemplate repayment of the entire judgment within the period of the plan but, instead, contemplates payment only of mortgage arrearages. Debtors' plan is thus dependent upon a cure of their default and reinstatement of their mortgage, remedies not available under the terms of section 1322(b)(2).[9]

---

**6.** This Court does not necessarily agree with the *Gwinn* court's catagorization and classification of every case it cited, but has quoted the *Gwinn* survey to demonstrate the latitude of decisions now comprising the case law under § 1322(b). A similar survey appears in *In re Ivory,* 32 B.R. 788, 790 (Bkrtcy.D.Or.1983).

**7.** Courts which have permitted deceleration and reinstitution subsequent to execution sale, *see* note 6 *supra* and accompanying text, would, *a fortiori,* permit the same prior to sale.

**8.** 11 U.S.C. § 1322(c) provides:

The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

**9.** Because debtor's plan is insufficient for failure to provide payment within the term of the plan, the Court need not decide whether a judgment of foreclosure could be modified under § 1322(b)(2) if the plan contemplated complete repayment within the time limits of § 1322(c).

Sections 1322(b)(3) and (b)(5) have been the main focus of most courts in resolving cases involving Chapter 13 debtors. The leading case permitting cure and reinstatement is *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). The *Taddeo* court held that the limitation against "modification" of mortgage liens under section 1322(b)(2) did not restrict a debtor's right to "cure" a mortgage default under section 1322(b)(3) and (b)(5). *Id.* at 27–28.[10] The *Taddeo* court explained:

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code....
>
> \*     \*     \*     \*     \*     \*
>
> Secondly, we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining pay-

ments" under (b)(5) to be *modifications* of claims.

685 F.2d at 26–27.

The *Taddeo* court stated that policy considerations strongly supported its holding:

> Conditioning a debtor's right to cure on its having filed a Chapter 13 petition prior to acceleration would prompt unseemly and wasteful races to the courthouse. Worse, these would be races in which mortgagees possess an unwarranted and likely insurmountable advantage: wage earners seldom will possess the sophistication in bankruptcy matters that financial institutions do, and often will not have retained counsel in time for counsel to do much good. In contrast, permitting debtors in the Taddeos' position to de-accelerate by payment of the arrearages will encourage parties to negotiate in good faith rather than having to fear that the mortgagee will tip the balance irrevocably by accelerating or that the debtor may prevent or at least long postpone this by filing a Chapter 13 petition.

*Id.* at 27.

The mortgagee distinguishes this case from *Taddeo* because the mortgagee has, in this case, obtained a default judgment. In *Taddeo*, on the other hand, the creditors had accelerated their mortgage but had not obtained foreclosure judgment prior to the filing of a Chapter 13 plan. *Taddeo*, Ninth Ward correctly states, never resolved the issue confronting this court: whether the power to cure a default and maintain payments under sections 1322(b)(3) and (b)(5) is

Section 1322(b)(2) does not apply to claims "secured only by a security interest in real property that is the debtor's principle residence." "Security interest" is defined in the Bankruptcy Code as a "lien *created by agreement.*" 11 U.S.C. § 101(37) (emphasis added). As explained earlier, mortgagee's judgment sci fa sur mortgage gave it a lien on debtors' private residence. A strong argument can be made that the prohibition in § 1322(b)(2) does not apply to liens created by judgment of foreclosure. At least one court, however, has held that, "consistent with the intent of Congress to provide special protection to home mortgages, a foreclosure judgment should retain the character of a 'security interest' or lien created by an agreement

and therefore not a lien which could be modified under § 1322(b)(2)." *In re Ivory*, 32 B.R. 788, 793 (Bkrtcy.D.Or.1983); *but see In re McCann*, 27 B.R. 678, 679 (Bkrtcy.S.D.Ohio 1982) (allowing modification under plan contemplating full repayment).

10. The court also held that even though § 1322(b)(5) applies only to claims whose last payments are due after the last payment under the plan is due, an accelerated mortgage, whose payments are due immediately, may be "cured" first under (b)(3) and then may be subject to a payment schedule under (b)(5). *Taddeo*, 685 F.2d at 28.

permissible after entry of a judgment of foreclosure.

Debtors argue that the intervening state court judgment should not be permitted to override the rehabilitative purpose of Chapter 13. Essentially, they rely on the broad language in *Taddeo* that "curing" a default means "taking care of the triggering event and returning to pre-default conditions." *Taddeo*, 685 F.2d at 26–27. Presumably debtors wish to have the Court nullify or otherwise neutralize the state court judgment and the lien of that judgment.

Debtor's position cannot be adopted. The Court, as explained earlier, has treated debtors' mortgage as not merged in the judgment. Cure of debtors' default and maintenance of payments under sections 1322(b)(3) and (b)(5) could thus theoretically operate to decelerate and reinstate the *mortgage*. This deceleration and reinstatement would, however, leave the debtors' obligation under the *judgment* unaffected. The existence of this independent judgment is a crucial difference from *Taddeo* where no foreclosure judgment had been obtained. Creditor's judgment is a secured claim in the personal residence of the debtor under Delaware law. Payment is due immediately. The judgment is not, and never was, a claim in which "the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). It follows section 1322(b)(5) is unavailable as a statutory basis upon which to decelerate and reinstate a mortgage following a judgment of foreclosure in Delaware state court.

Nor can, as in *Taddeo*, section 1322(b)(3) serve as an independent basis to achieve deceleration. *See* note 10 *supra* at 10. This case does not involve simply an accelerated mortgage which can be reinstated to a prior condition; it involves an independently existing debt obligation which cannot, literally, be "cured."

In light of this facial statutory obstacle, debtors could prevail only if general congressional interest in rehabilitating Chapter 13 debtors were translated into congressional authorization for a federal bankruptcy court to suspend, modify or set aside state court liens and judgments. Nothing in section 1322(b), or anywhere else in Chapter 13 or its legislative history, suggests that Congress intended such a result. Indeed, where Congress elsewhere desired bankruptcy courts to intrude in ongoing judicial proceedings, it did so explicitly, using unambiguous language. *See, e.g.* 11 U.S.C. § 362(a)(2) (automatic stay provision, providing for the stay "of a judgment obtained before the commencement of the case under this title"). As Chief Judge Crabb stated in *In re Clark*, 32 B.R. 711 (W.D.Wis.1983), one of the few district court decisions previously to address the question now before this Court,

> Nothing in § 1322(b) suggests that "curing of a default" may be read as including the right to set aside a state court judgment and reinstate prejudgment mortgage obligations and rights. Curing a default is not the same thing as suspending or annulling a state court judgment. To assume that the former includes the latter is an assumption that cannot stand scrutiny.

*Id.* at 714. If Congress desired the bankruptcy courts to modify, suspend or otherwise ignore state court judgments in section 1322(b), it would have used explicit language.

Disallowing reinstatement of a mortgage after entry of a foreclosure judgment does not undercut *Taddeo*'s policy considerations. *Taddeo* was particularly concerned with the spectre of unseemly races to the courthouse and with the unreasonable advantage that mortgagees would hold if mere acceleration terminated a debtor's right to cure his default. *See* text *supra* at 1005. The holding of this case reverses that advantage. Where default judgment, instead of acceleration, is the cut-off point for a debtor's right to cure, the race to the courthouse is handicapped in the debtor's favor. The mortgagee's advantage in the *Taddeo* situation arises because a mortgagee can accelerate immediately upon giving a debtor notice of his decision to accelerate. In contrast, debtors in Delaware must receive advance notice of a mortgage foreclosure complaint. Debtors can thus consult

counsel after receiving service of the complaint and can put off entry of default judgment by filing a Chapter 13 petition. In addition, before filing a Chapter 13 plan, debtors can negotiate with creditors to forestall entry of default judgment by dangling before the creditors the threat of a bankruptcy petition.[11] Thus, the *Taddeo* policy arguments are not as compelling once a creditor has received a judgment against a debtor.

There are, in addition, affirmative reasons why the right to cure under section 1322(b) should not be interpreted as embracing the right to modify a judgment and its lien. These are reasons of practical application, all centering on avoiding uncertainty, reducing the potential for mischief, and eliminating the potential clouding of real estate titles. The magnitude of these practical problems was articulated in *In re Pearson*, 10 B.R. 189 (Bkrtcy.E.D.N.Y. 1981):

> What would be the status of an unsatisfied judgment when the Chapter 13 plan terminated after three or five years, and the jurisdiction of the bankruptcy court ended? Could the mortgagee then seek enforcement of his judgment? If not, why not, since the judgment had never been satisfied? True, the Chapter 13 plan had cured arrearages, but it had not paid off the judgment. It would be up to the state courts to decide to what extent the judgment survived. How this would be done procedurally is unclear. Equally unclear is what the result would be. Nor would the results necessarily be uniform. For a period of years, neither

the debtors, nor the mortgagees, would know their rights.

*Id.* at 194.

Recently, *In re Gwinn*, 34 B.R. 936 (Bkrtcy.S.D.Ohio 1983), attempted to answer these concerns. The *Gwinn* court explained that a bankruptcy court could use its "broad equitable powers" to restrain a mortgagee "from taking any further steps to enforce its mortgage, unless certain specified events occur." *Id.* at 943–44. After a debtor successfully completed his plan, the *Gwinn* court explained, "the court could use its equitable powers to order the mortgagee to take whatever actions are necessary to remove from record any certificates of judgment or decrees of foreclosure that may be pending." *Id.* at 944. The court could also order the mortgagee "to join with the debtor to petition the state court for relief from the foreclosure judgment." *Id.* Should the debtor default again, the *Gwinn* court explained, the court could vacate its injunction and allow the mortgagee "to proceed with its foreclosure." *Id.*

The *Gwinn* solution does not, in the view of this Court, sufficiently unravel the procedural tangles presented by a rule allowing a cure after judgment. The *Gwinn* court's detailed answer to those problems only demonstrates why allowing a cure after judgment would inevitably involve the bankruptcy courts in considerable and ongoing intrusion into state court affairs.[12]

In the absence of statutory language or legislative history authorizing federal inter-

11. This difference in procedural posture after entry of judgment was recognized by the *In re Clark* court. The court explained:
   The policy considerations which justify the abrogation of a contractual right to accelerate do not justify aborgation of state court judgments. Once a state court action has reached the point of entry of judgment, the possibilities of negotiating a good faith settlement have been exhausted. And while it may be that unsophisticated debtors will not have consulted counsel before the acceleration clause on their mortgage is triggered, it is far less likely that they will not have consulted counsel before the state court action against them has been concluded.
   32 B.R. at 715.

12. The *Gwinn* solution is, in any event, only a partial remedy. Among issues not answered are: in states where a mortgage is merged into a judgment, how can a mortgage be reinstated when in theory there is no longer a mortgage in existence; in jurisdictions unlike Delaware with a statutory period of redemption, if the period is longer or shorter than the plan period, what happens to the period of redemption, *cf. In re Clark*, 32 B.R. at 716; who, when and how are items such as attorney's fees and costs incident to the foreclosure and priority liens such as delinquent real estate taxes paid—typically, they are paid from the foreclosure proceeds resulting from execution on the foreclosure judgment.

ference in state court foreclosure judgments, I hold that 11 U.S.C. § 1322(b) does not permit cure of a default and reinstatement of a mortgage on a debtors' principal residence after a judgment of foreclosure has been obtained.

An order will be entered affirming the bankruptcy court's denial of confirmation of debtors' plan.