In the Matter of CELESTE COURT APARTMENTS, INC., Debtor.

Civ. A. No. 84–632 MMS.

United States District Court, D. Delaware.

March 13, 1985.

Peter J. Walsh, and John M. Bloxom, IV, Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for appellant.

Daniel H. Krapf, Morris, James, Hitchens & Williams, Wilmington, Del., for appellee.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This is an appeal brought by debtor Celeste Court Apartments, Inc. ("debtor" or "Celeste Court") from a decision of the United States Bankruptcy Court for the District of Delaware which refused to confirm debtor's Chapter 11 plan of reorganization. The central issue is whether a bankruptcy court may confirm a plan that cures and reinstates a mortgage encumbering debtor's property if a judgment of foreclosure was entered before the debtor filed its petition in bankruptcy.

The relevant facts are undisputed. The debtor acquired an apartment building from Guido DeAscanis & Sons, Inc. ("DeAscanis") on April 10, 1976, in exchange for cash and debtor's agreement to assume DeAscanis's mortgage obligation to Gilpin, Van Trump & Montgomery, Incorporated ("Gilpin"). Debtor stopped making payments on the mortgage in November, 1982, apparently due to internal disputes. On April 18, 1983, Gilpin filed its complaint scire facias sur mortgage in Delaware Superior Court for the accelerated mortgage balance against the property; DeAscanis, as mortgagor; and debtor, as terre-tenant. A judgment scire facias sur mortgage was entered on August 2, 1983, in favor of Gilpin and against the property and DeAscanis in the amount of $255,-224.67 plus interest and costs. A sheriff's sale by writ of levari facias was scheduled for October 11, 1983, to satisfy the outstanding principal balance. On October 7, 1983, the debtor filed its petition for relief under chapter 11 of the Bankruptcy Code and obtained an automatic stay of the sheriff's sale under 11 U.S.C. § 362(a).

The debtor filed its plan of reorganization with the Bankruptcy Court on June 11, 1984. The plan proposed that debtor would pay Gilpin all amounts that Gilpin would have been entitled to receive under the mortgage through the date of confirmation, as well as damages caused by debtor's default. In exchange, the debtor sought an order decelerating the mortgage and reinstating the payment schedule. The plan also proposed a sale of the property, subject to the reinstated mortgage, to a limited partnership which would operate the apartment building. Gilpin filed objections to the confirmation of debtor's plan, arguing, *inter alia,* that the entry of the foreclosure judgment precluded the Bankruptcy Court from curing and reinstating the mortgage.

The Bankruptcy Court reviewed the earlier decisions in this district in *In re Monroe Park,* 18 B.R. 790 (Bankr.D.Del.1982), a chapter 11 case, and *In re Skelly,* 38 B.R. 1000 (D.Del.1984). In *Monroe Park,* the Bankruptcy Court held that a mortgage could not be reinstated after foreclosure judgment because "[u]nder Delaware law the mortgage is merged in [the] judgment." *Id.* at 791. In *Skelly,* discussed

more fully below, the District Court upheld the Bankruptcy Court's refusal to confirm a chapter 13 plan which provided for cure and reinstatement of a mortgage after entry of judgment of foreclosure, but expressly left open the question whether the mortgage was merged into the judgment and therefore was incapable of being reinstated. Instead, the *Skelly* reviewing court held that a judgment of foreclosure gives rise to a lien and judgment in the accelerated amount of the mortgage which exists independent of the mortgage. 38 B.R. at 1003. Based on these two decisions, the Bankruptcy Court sustained Gilpin's objection, holding that "the law in this District precludes cure and reinstatement after an entry of a judgment of foreclosure by a state court." (Dkt. 32, at 2). Debtor then filed this appeal.

■ Viewed in the context of chapter 11, the Bankruptcy Court's conclusion was but a cryptic statement that Gilpin, being the only mortgagee and therefore the sole member of its class, had its interest impaired under 11 U.S.C. § 1129(a)(8).[1] Whether a claim is considered impaired is controlled by 11 U.S.C. § 1124, which is quoted in the margin.[2] Under section 1124

---

1. In pertinent part 11 U.S.C. § 1129(a) provides: The court shall confirm a plan only if all of the following requirements are met:

 &ast; &ast; &ast; &ast; &ast; &ast;

 (8) With respect to each class—
 (A) such class has accepted the plan; or
 (B) such class is not impaired under the plan.

2. 11 U.S.C. § 1124 provides:
 Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
 (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;
 (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
 (A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;
(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—
(A) with respect to a claim, the allowed amount of such claim; or
(B) with respect to an interest, if applicable, the greater of—
(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; and
(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

all claims are considered impaired unless one of the three exceptions is applicable. Gilpin's objection to the plan raises the issue of whether a mortgagee who obtains a judgment of foreclosure under Delaware law prior to the filing of a chapter 11 petition in Bankruptcy Court suffers an impairment of interest within the meaning of 11 U.S.C. § 1124 where a proposed plan would decelerate the mortgage, cure the default, and reinstate the mortgage and accompanying payment schedule. More precisely, the question is whether reinstatement of a mortgage after foreclosure judgment would alter the mortgagee's legal and equitable rights within the meaning of 11 U.S.C. § 1124(1) and § 1124(2)(D). Because state, not federal, law determines a creditor's property rights in bankruptcy, *Butner v. United States*, 440 U.S. 48,. 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979), the real issue is what rights are created by a state court judgment of foreclosure. This Court has previously decided this issue adversely to the debtor. *See In re Skelly*, 38 B.R. 1000 (D.Del.1984).

The heart of debtor's argument is that *In re Skelly*, upon which the Bankruptcy Court relied, was decided incorrectly. The facts in *Skelly* are virtually identical to this case. Debtors there failed to make payments on the mortgage covering their home and had a default judgment scire facias ("sci fa") sur mortgage entered against them and their property. The debtors filed a chapter 13 petition the day before the sheriff's sale. The Bankruptcy Court, relying upon *In re White*, 22 B.R. 542 (Bankr.D.Del.1982), denied confirmation of the debtor's plan, stating: "[T]here can be no cure and reinstatement of a mortgage after a judgment of foreclosure has been entered because under Delaware law the mortgage is merged in that judgment." 38 B.R. at 1001. On appeal, this Court, after reviewing Delaware law, found that it need not decide whether the mortgage was merged into the judgment. Instead, the Court held that "it is incontrovertible that under Delaware law the judg-

ment on the sci fa sur mortgage created a lien on the mortgaged premises for the accelerated amount of the mortgage in the amount of the default judgment." *Id.* at 1003. Even assuming that a mortgage default could be cured, the Court found that chapter 13 of the Bankruptcy Code did not authorize it to disturb the state court foreclosure judgment, which had created a lien with an effect independent of the mortgage. *Id.* at 1007–08.

Although *Skelly* involved chapter 13 and Celeste Court filed under chapter 11, debtor does not suggest that, in this context, a chapter 13 debtor's ability to cure mortgage defaults differs significantly from that of a chapter 11 debtor. Under both chapters, a debtor's plan may "provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3); *see* 11 U.S.C. § 1123(a)(5)(G); *see also In re Taddeo*, 685 F.2d 24, 29 (2d Cir.1982).

■ Rather than distinguish *Skelly* because it involved chapter 13, debtor points out that the sci fa judgment in *Skelly* was taken against the debtor, whereas the judgment here did not name Celeste Court. This distinction is without significance. A sci fa judgment, by its very nature, creates a lien on the mortgaged property. *Skelly*, 38 B.R. at 1003; *see* 2 *Woolley on Delaware Practice* § 1373, at 927 (1906) (hereinafter cited as "*Woolley*"); *cf. Equitable Trust Co. v. O'Neill*, 420 A.2d 1196, 1199–1200 (Del.Super.1980). It is axiomatic that a lien against property owned by the debtor operates as a claim against the debtor in bankruptcy. *See* 11 U.S.C. § 102(2) ("claim against the debtor includes claim against property of the debtor"). Debtor has not disputed the validity of Gilpin's claim under 11 U.S.C. § 502, and counsel for debtor acknowledged at oral argument that Gilpin has a claim against the property of the debtor under the Bankruptcy Code. The fact that the judgment in *Skelly* named the debtor and the judgment here does not name the debtor is irrelevant—both judgments result in cogni-

zable claims in bankruptcy.[3] Debtor does not suggest that the holding of *Skelly* was in any way dependent upon the fact that the sci fa judgment named the debtor. In sum, the minor factual difference between *Skelly* and this case is a distinction without a difference.

Debtor further argues that *Skelly* incorrectly construed the effect of a sci fa judgment under Delaware law and is inconsistent with federal bankruptcy law. Debtor alleges that the function of a judgment sci fa sur mortgage is "merely" to confirm the existence of the mortgage, its validity, and the default of the mortgagor. The effect of the judgment, debtor argues, is "merely" to enable the mortgagee to have execution pursuant to the mortgage.

■■■ Debtor's argument belittles the importance of a sci fa sur mortgage judgment. A complaint on a sci fa sur mortgage puts the existence of the mortgage debt in issue and orders the mortgagor to show cause why the mortgaged premises should not be taken in execution and sold to satisfy the debt. *See* 2 *Woolley* § 1358, at 918–19; *id.* § 1371; *Skelly*, 38 B.R. at 1002 n. 4; 10 *Del.C.* § 5061. The sci fa proceeding may appear simple, because the facts are usually undisputed, but it is mortgagor's chance to litigate the existence of the debt and present any defenses. *See Gordy v. Preform Building Components, Inc.*, 310 A.2d 893, 895–96 (Del.Super.1973). Indeed, because a sci fa judgment alters property rights, a terre-tenant has a constitutional due process right to notice of the sci fa proceeding. *Brown v. Federal National Mortgage Ass'n*, 359 A.2d 661, 663 (Del.1976). Moreover, once a sci fa judgment is entered, mortgagor may appeal it to the Delaware Supreme Court, *cf. Monroe Park v. Metropolitan Life Ins. Co.*, 457 A.2d 734 (Del.1983), and mortgagor may only retain the premises by satisfying the full amount of the judgment, just as any other final judgment may only be satisfied by full payment. *See* 2 *Woolley*

§ 1382. Thus, as this Court concluded in *Skelly*, a sci fa sur mortgage judgment is a final judgment on the mortgage which creates an independent lien on the mortgaged premises in the amount of the judgment. Debtor has not presented any reason why this result should be changed, nor has debtor offered answers to the practical problems that would ensue if a debtor were allowed to cure and reinstate a mortgage without satisfying the foreclosure judgment. *See Skelly*, 38 B.R. at 1007.

Debtor argues that 11 U.S.C. § 1123 expressly authorizes the cure and reinstatement of a mortgage even after a judgment of foreclosure has been entered. Debtor points to nothing specific in section 1123 that authorizes this remedy, but argues that because the definition of "claim" in 11 U.S.C. § 101(4)(A) includes a "right to payment ... reduced to judgment," the section authorizing the cure of defaults upon which a claim is based also authorizes altering a state court judgment that arises from a default. However, creditor's "claim" is an independent lien on debtor's property, not merely a defaulted mortgage, and this lien is not susceptible to cure. Moreover, the language debtor extracts from disparate statutory sections falls short of the specific grant of power a court needs from Congress in order to upset a state court judgment. Debtor has not cited anything in chapter 11 or in its legislative history that suggests Congress intended federal bankruptcy courts to modify or set aside state court liens and judgments in this context. "Indeed, where Congress elsewhere desired bankruptcy courts to intrude in ongoing judicial proceedings, it did so explicitly, using unambiguous language." *Skelly*, 38 B.R. at 1006. If debtor's interpretation were correct, one would expect to find some indication that Congress intended to grant such powers to federal bankruptcy courts. The fact that the definition of "claim" includes claims

---

**3.** Moreover, Celeste Court, as terre-tenant, was named as a defendant in the sci fa proceeding, and its counsel signed and consented to the sci fa judgment order. (Dkt. 3, attachment to Doc. V.)

reduced to judgment does not evidence such an intent.

■ Debtor cites language from *Valente v. Savings Bank of Rockville*, 34 B.R. 362 (D.Conn.1983), as supporting a contrary result. The court there held that a chapter 11 debtor could decelerate and reinstate a mortgage even after a judgment of foreclosure had been entered in state court. Although the district court found a basis in state law for reversing the decision of the bankruptcy court, it went on to state: "[T]he power to cure authorized by § 1123(a)(5)(G) reaches even to state courts' final judgments. Nothing in the language of this subsection restricts its 'power to de-accelerate' from reaching such judgments." 34 B.R. at 366. The *Valente* court read chapter 11 broadly and presumed that power is granted unless specifically forbidden. This Court takes a different view. Considerations of comity and appropriate respect for state court judgments require a federal court to decline to modify a state court judgment unless expressly authorized to do so by Congress.[4]

Debtor also directs the Court's attention to *In Re Madison Hotel Associates*, 749 F.2d 410 (7th Cir.1984), in which the Seventh Circuit Court of Appeals allowed a debtor to cure and reinstate a mortgage after the entry of an order permitting foreclosure of the mortgage, but prior to entry of judgment of foreclosure. The Seventh Circuit panel expounded at length in dicta that its result would have been the same even if the mortgagee had obtained a judgment of foreclosure. *Id.* at 422–23. The *Madison Hotel* court specifically noted, however, that its analysis was limited to the applicable law of foreclosure in Wisconsin. *See id.* at 423 n. 11. The court relied on the fact that a Wisconsin foreclosure judgment does little more than judicially determine the amount due on the mortgage. *Id.* at 422. The Seventh Circuit distinguished Delaware law, as defined in *Monroe Park*, because " '[u]nder Delaware

law the mortgage is merged in [the] judgment.' " *Id.* at 423 (quoting *In re Monroe Park*, 18 B.R. at 791). The Seventh Circuit specifically noted that a different result might be required if the mortgage merged into the judgment. *See* 749 F.2d at 423 & n. 11. Notwithstanding the merger doctrine, it is true in Delaware, as discussed above, that a sci fa sur mortgage judgment determines more than the amount due—it creates a lien independent of the mortgage. The difference in the effects of foreclosure judgments in Wisconsin and Delaware is sufficient to render the holding in *Madison Hotel* inapplicable.

Moreover, *In re Skelly, supra,* left open the question whether under Delaware law a mortgage is merged into the foreclosure judgment. The Court stated:

The Bankruptcy Court held that under Delaware law the debtor's foreclosure action "merged" the mortgage into the judgment. Although the Bankruptcy Court's holding is not necessarily inconsistent with the above discussion of Delaware law, this Court has found no case law or commentary directly supporting the "merger" concept.[5] This question of merger need not, however, be decided.

[5] The Delaware Supreme Court, citing *Woolley* with approval, has noted that the colonial Delaware statute "was modeled after a Pennsylvania statute enacted in 1705." *Monroe Park v. Metropolitan Life Ins. Co.*, 457 A.2d 734, 735 n. 4 (Del.1983). Analogy to early Pennsylvania law, however, does not help resolve the merger question. An early Pennsylvania case held that the lien of a mortgage is not merged in a judgment on a sci fa where the lien of the judgment has not been timely revived. *Helmbold v. Man*, 4 Whart. 410 (1839). However, in *Hartman v. Ogborn*, 54 Pa. 120 (1867), the court held that after the sci fa sur mortgage has ripened into a judgment,

---

**4.** A different situation exists where the state court judgment is procured by fraud. *See Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed.

281 (1939). Debtor has not alleged the judgment in this case was procured by fraud or other unlawful means.

"the mortgage is merged in it." *Id.,* at 123. Later Pennsylvania cases appear to follow the *Hartman v. Ogborn* rule. *See Kennedy v. Baker,* 159 Pa. 146, 28 A. 252 (1893); *Murray v. Weigle,* 118 Pa. 159, 11 A. 781 (1888).

38 B.R. at 1002–03.

 While the Delaware Supreme Court has never spoken on this question, it is the common lore of the Delaware bar that a mortgage merges into the sci fa judgment. In fact, the merger doctrine is so commonly accepted that in the order entering judgment of foreclosure on the very mortgage at issue in this proceeding, the Superior Court noted that "the Mortgage obligations are merged into the judgment." (Dkt. 3, attachment to Doc. V). All counsel to that proceeding, including present counsel representing Celeste Court, consented to the entry of that order. While not conclusive as to whether the Delaware Supreme Court would hold that a mortgage is merged into a judgment, this lower court order should be accorded some weight. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Moreover, the consent of counsel to an order reciting a merger of the mortgage into the judgment in the very mortgage at issue is perilously close to constituting issue preclusion in this case.[5] For all the reasons above, I am persuaded the Delaware Supreme Court would hold that the mortgage sub judice on Delaware real property was merged into the judgment of foreclosure.

 In sum, debtor has failed to convince the Court that *Skelly* was wrongly decided or that it is inapplicable to the facts of this case. The Court also finds, as another basis for its decision, that the mortgage at bar merged into the judgment of foreclosure with the result that there is no mortgage to reinstate. Accordingly, the decision of the Bankruptcy Court denying confirmation of debtor's plan will be affirmed.

---

**5.** Preclusive effect was neither briefed nor argued by the parties. For that reason, the Court declines to rely upon "preclusive effect" as an alternate ground of decision.