**MONROE PARK, a limited partnership organized and existing under the laws of the State of Delaware, with Henry L. Weinstein as general partner, Defendant Below, Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a corporation of the State of New York, Assignee of Gilpin, Van Trump and Montgomery, Inc., a corporation of the State of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted on Reargument: Dec. 9, 1982.

Decided: Feb. 4, 1983.\*

\* This opinion after reargument is a revised version of the original opinion on appeal and supercedes the original opinion.

William O. LaMotte, III, Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant below, appellant.

William F. Lynch, II, and David H. Williams (argued), Morris, James, Hitchens & Williams, for plaintiff below, appellee.

Before McNEILLY, QUILLEN and MOORE, Justices.

MOORE, Justice:

This mortgage foreclosure action was begun by a writ of *scire facias sur mortgage* pursuant to 10 *Del.C.* § 5061.[1] The trial court entered summary judgment in plaintiff's favor.[2] The question we address is whether the Superior Court may grant relief on a writ of *scire facias* where the mortgage does not bear a seal of the mortgagor. Because of the continuing legal significance of a party's seal to financial documents in Delaware, and the trial court's marked departure from well established Delaware statutory and judicial precepts, we reverse.

Delaware has long permitted foreclosure by either a bill in equity, filed in the Court of Chancery,[3] or at law by *scire facias sur mortgage*. *Stidham v. Brooks*, Del. Supr., 5 A.2d 522 (1939); 2 Woolley on Delaware Practice § 1355–56 (1906).[4] The equitable and legal foreclosure remedies are concurrent, but the mortgagee must elect whether to seek relief at law or equity. As stated by Woolley:

1. 10 *Del.C.* § 5061 provides:

   Upon breach of the condition of a mortgage of real estate by nonpayment of the mortgage money, or nonperformance of the conditions stipulated in such mortgage, at the times and in the manner therein provided, the mortgagee, his heirs, executors, administrators, or assigns, may, at any time after the last day whereon the mortgage money ought to be paid, or other conditions performed, sue out of the Superior Court of the county, wherein the mortgaged premises are situated, a writ of scire facias upon such mortgage directed to the sheriff of the county, and commanding him to make known to the mortgagor, his heirs, executors, or administrators, that he, or they, appear before the Court to show cause, if there is any, wherefore the mortgaged premises ought not to be seized and taken in execution for payment of the mortgage money, with interest, or to satisfy the damages which the plaintiff in such scire facias shall, upon the record, suggest for the nonperformance of the conditions.

2. *Metropolitan Life Insurance Co. v. Monroe Park*, Del.Super., 442 A.2d 503 (1982).

3. The authority of the Court of Chancery to grant equitable foreclosure is derived from the power vested in the High Court of Chancery in Great Britain to foreclose on a mortgage by a bill in equity. Woolley, *supra*, at § 1355. According to an "[a]ct for establishing courts of law and equity within this government", which pre-dates the Revolution, the original Delaware Court of Equity had jurisdiction over "all such matters and causes of equity ... observing as near as may be the rules of practices of the High Court of Chancery of Great Britain." 1 *Del.L.* Ch. 54, § 21; *See also* Del. Const.1776, Art. 24.

4. The first Delaware statute authorizing foreclosure by *scire facias* at law was enacted during colonial times. 1 *Del.L.* Ch. 46, § 6. It was modeled after a Pennsylvania statute enacted in 1705. Woolley, *supra*, at § 1356.
   Scire facias has been defined as follows:
   A *scire facias* is not an original writ, but is a judicial writ founded on some matter of record, as a suit, judgment, recognizance, or mortgage, on which it lies either to enforce execution or for some other purpose, appropriate and incident to the record.
   Woolley, *supra*, at § 1309, p. 889.

The statute providing for [*scire facias* on the mortgage] ... is cumulative upon the remedy of foreclosure by bill in equity, in the sense that the mortgagee may proceed at his option by one or the other method. He cannot use concurrently his remedy by *scire facias* and by bill in equity, as the beginning of the latter is constructive abandonment of the former previously begun.

2 Woolley, *supra*, § 1356, at 917.

While plaintiff sought foreclosure at law by *scire facias,* it concedes that the mortgage as executed and recorded lacks a seal.[5] Historically, a mortgage was effective at common law only if it was under seal. Plaintiff accepts this point. Moreover, it is well settled that unless the seal requirement is abolished by statute, a mortgage must be under seal to be enforceable at law.[6] If the mortgage is not sealed, and the jurisdiction still requires a seal, it is enforceable only in equity. 9 Thompson, Commentaries on the Modern Law of Real Property § 4669, at 70 (1958); 59 C.J.S. Mortgages §§ 115, 120 (1949); 55 Am. Jur.2d *Mortgages* § 167 (1971).[7] Plaintiff contends, and the Court below held, that

the absence of a seal is a technical defect that does not affect the validity of the mortgage as between the parties to the instrument. While this is undoubtedly true as a general proposition, it is clear, and of particular significance in our decision to reverse, that the authorities relied upon by the trial court in support of this ruling recognize that it is only a court of equity that disregards these technical defects and enforces the mortgage between the parties, not the law court. *See, e.g.,* 9 Thompson, *supra,* at § 4669; 59 C.J.S. *Mortgages,* at § 115.[8]

The power of the Court of Chancery to disregard the absence of a seal was discussed by a noted scholar on equity jurisprudence:

> There are other instances of the disregard shown by equity to the presence or absence of a seal in determining the rights of the parties. If, for an example, an instrument, from its imperfect execution in wanting a seal, is inoperative at law as a conveyance or as a mortgage of land, equity may treat it as an agreement to convey or to give a mortgage, and as therefore creating an equitable interest or lien upon the land.

---

**5.** Plaintiff suggests that certain recitations in the note and mortgage imply that the latter was under seal. However, it is established that even a recital containing such words as "witness my hand and seal", or of similar import, does not operate to make the instrument one under seal. *See Vaccaro v. Andresen,* D.C. App., 201 A.2d 26, 28 (1964); 1A Corbin, Contracts § 242 (1963).

**6.** The Delaware statute regulating the form of mortgages contemplates that the mortgage be sealed. *See* 25 *Del.C.* § 2101(a).

**7.** As Thompson also states:

> A mortgage executed without a seal, where it is required is not a legal mortgage. In equity it amounts to a compact for a mortgage, and as such creates no lien as against purchasers from the mortgagor, or as against his creditors, or even against an assignee under a general assignment for the benefit of creditors. Seals have been abolished either by statutory enactment or judicial decision in most states, including all the states west of the Mississippi River, except Oregon. The decided tendency of modern decisions is to minimize the old distinction between sealed

and unsealed instruments, where they have not been entirely abrogated by legislation. 9 Thompson, *supra,* at § 4669, p. 70 (footnotes omitted).

**8.** See 442 A.2d at 507, but in addition to 9 Thompson, *supra,* at § 4669, it is also stated:

> The defective execution of a mortgage will not destroy its validity as between the parties, *since a court of equity* will consider it as an ineffectual attempt to carry out the previous agreement of the parties, and, regarding *that as done which ought to have been done* will enforce it as a mortgage, in accordance with their contract and intention.

59 C.J.S. *Mortgages,* at § 115 (emphasis added).

A latter section speaks specifically of the absence of a seal:

> At law, in the absence of a statute to the contrary, a mortgage requires a seal, and an unsealed instrument cannot constitute a valid mortgage of realty. However, as discussed supra ... equity will give effect to a mortgage which is defective only for want of a seal.

59 C.J.S. *Mortgages,* at § 120.

2 Pomeroy's Equity Jurisprudence § 383, at 49–50 (1941). Thus, it is evident from the above authorities that a seal is required for the enforcement of a mortgage at law, unless the seal requirement has been abrogated by statute.

■ The equitable power to disregard defects in the execution of a mortgage is based upon two equitable maxims. First, equity regards substance rather than form. *See Kelley v. Mayor and Council of Dover,* Del.Ch., 300 A.2d 31 (1972); 2 Pomeroy's, *supra,* at § 378. Second, equity regards that as done which in good conscience ought to be done. *Equitable Trust Co. v. Ward,* Del.Ch., 48 A.2d 519 (1946); 2 Pomeroy's, *supra,* at § 364.

■ The historical significance of the seal has been diminished in some jurisdictions, and many states have abolished the requirement by legislation. 9 Thompson, *supra,* at § 4669; 1A Corbin on Contracts § 241 (1963).[9] Delaware, however, still recognizes the validity and unique effect of sealed contracts, mortgages, and other instruments. For example, under Delaware decisional law, the existence of a seal precludes challenges to the validity of a contract on the ground of lack of consideration, *Husband (P.J.O.) v. Wife (L.O.),* Del.Supr., 418 A.2d 994 (1980); *Hensel v. U.S. Electronics Corp.,* Del.Supr., 262 A.2d 648 (1970), and exempts the contract from the applicable statute of limitations. *Leiter v. Carpenter,* Del.Ch., 22 A.2d 393 (1941); *Garber v. Whittaker,* Del.Ch., 2 A.2d 85 (1938). Moreover, the continuing validity and use of sealed instruments and contracts in Delaware jurisprudence and practice is recognized by various current provisions of the Delaware Code. *See, e.g.,* 10 *Del.C.* § 8106 (debts evidenced by an instrument, under seal exempted from the 3 year statute of limitations); 25 *Del.C.* § 156 (recognition of seal for purposes of recording); 25 *Del.C.* § 2109 (assignments of mortgages or sealed instruments); 25 *Del.C.* § 2110 (release by mortgagee or part of mortgaged premises must be under seal).

■ The plaintiff argues that the seal requirement has been implicitly eliminated from our law because of its abolition on deeds (25 *Del.C.* § 131). However, it is clear from our statutes pertaining to mortgages that they affirmatively express a legislative intent that a seal remain a requirement for enforcement of a mortgage in a *scire facias* proceeding at law. Under 25 *Del.C.* § 2110, every release of a mortgage "shall be under hand and seal". Coupled with 25 *Del.C.* § 2101, clearly referring to a seal on the form of mortgage in this State, it is apparent that the General Assembly intended releases of mortgages to be of equal dignity to mortgages themselves. Moreover, since 25 *Del.C.* § 2101, regarding the form of mortgages, was enacted after section 2110, the following principle of statutory construction applies:

> In terms of legislative intent it is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter, wherefore it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together.

2A Sutherland, Statutes and Statutory Construction § 51.02, at 290. (3d rev. ed. 1973).

■ The plaintiff also contends that there has been a merger of law and equity in connection with the enforcement of mortgages, so that the Superior Court could ignore the seal requirement in a scire facias action. In support of this, the plaintiff relies on 10 *Del.C.* § 542(c), which states that the Superior Court "shall minister justice to all persons, and exercise the jurisdiction and powers granted it, concerning the premises, according to law and equity".

---

**9.** The seal requirement has also been the subject of some criticism. Thompson, *supra,* at § 3261; 23 Am.Jur.2d *Deeds* § 27 (1965).

This argument has two fallacies. First, in Delaware there remains an historic and constitutional separation of law and equity. Indeed, under article IV, section 7 of the Delaware Constitution, the Superior Court's jurisdiction relates to all civil causes at "common law" while article IV, section 10 and 10 Del.C. § 341, make clear the Court of Chancery's jurisdiction to hear and determine all matters and causes in equity. Thus, to give 10 Del.C. § 542(c) the interpretation urged upon us by the plaintiff would be to abridge the separation of common law and equity jurisdiction established in this State. Second, an action of *scire facias* is purely a common law remedy. There is no basis for employing equity jurisdiction in such a matter. At best it appears that 10 *Del.C.* § 542(c) is a statutory grant of power to the Superior Court to administer and supervise the jurisdiction and powers otherwise granted to it. Nothing in section 542(c) can be construed as conferring any aspect of the Court of Chancery's historic, constitutional, or statutory jurisdiction upon the Superior Court. Nor does that section compel or invite the adoption of substantive equity principles for their own sake.

The General Assembly, if it deems it necessary or appropriate, may eliminate the requirement of a seal on mortgages, but we cannot abolish the seal requirement by judicial legislation. Thus, we have no recourse but to reverse. Unfortunately, this is an anachronistic result. The law should be an ever developing body of doctrines, precepts, and rules designed to meet the evolving needs of society. This was the obviously commendable intent of the decision below. While stare decisis has its place, the strength of the Common Law is its ability to grow and respond to the realities of life. Absent this, the law fails in its vital purpose.

But here we confront a pervasive statutory intent to keep viable that which modern trends have relegated to the legal attic. Although we commend this to the General Assembly for its consideration, we cannot alter that which the elected representatives of the people have so consistently ordained.

\* \* \* \* \* \*

REVERSED.