**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: October 24, 2014
Date Decided: November 19, 2014

Daniel T. Conway, Esquire
Atlantic Law Group, LLC
512 East Market Street
Georgetown, Delaware 19947

Earl Strong
P.O. Box 471
11 Gooseneck Lane
Smyrna, Delaware 19977

Re: *Wells Fargo Bank, NA v. Earl Strong*,
Civil Action No. 8538-MA

Dear Counsel and Mr. Strong:

Before me are the Plaintiff Wells Fargo Bank's exceptions to the final report issued by Master Ayvazian on July 15, 2014 (the "Master's Report"), which recommends dismissal of the Plaintiff's Complaint seeking the imposition of an equitable lien on real property located at 11 Gooseneck Lane, Smyrna, Delaware 19977 (the "Property").

## I. BACKGROUND FACTS

The present dispute between the Plaintiff Wells Fargo Bank and the Defendant Earl Strong has surfaced in several iterations in the courts of this State before now landing in the Court of Chancery, and the reader is referred to the

opinions of those courts for a thorough factual and procedural background.[1]  For the purposes of this Letter Opinion, the relevant facts are limited to the realm of the narrow procedural issue in question.

The Plaintiff alleges that in October of 2004 the Defendant executed a mortgage on the Property with MIT Lending in exchange for a loan of $205,777, to be repaid in monthly payments of $1,133.55.[2]  After the Defendant failed to make those monthly payments, MIT Lending's nominee under the mortgage agreement, Mortgage Electronic Registration Systems, Inc. ("MERS"), filed a foreclosure action in the Superior Court of Kent County, where it received a default judgment against the Defendant on November 3, 2005.  When MERS attempted multiple times to convert its default judgment into a writ of *levari facias* on the Property, however, the Defendant filed three consecutive *pro se* petitions for bankruptcy protection, tying the proceedings up in automatic stays over several years.  After MERS was able to obtain relief from the last of these automatic stays in 2010, it assigned its rights under the mortgage to the Plaintiff and, subsequently on January

---

[1] *See Wells Fargo Bank, NA v. Strong*, 2014 WL 3530829 (Del. Ch. July 15, 2014); *Strong v. Wells Fargo Bank*, 2013 WL 1228028 (Del. Super. Jan. 3, 2013); *Strong v. Wells Fargo Bank*, 2012 WL 6961995 (Del. Super. Nov. 30, 2012); *Strong v. Wells Fargo Bank*, 2012 WL 3549730 (Del. Super. July 20, 2012); *Mortg. Elec. Registration Sys., Inc. v. Strong*, 2011 WL 5316766 (Del. Super. Oct. 19, 2011).  Unless otherwise indicated, the facts found herein were taken from the Master's Report.

[2] The validity of the mortgage agreement has been the focal point of the previous litigation between the parties.  The Defendant denies entering into a mortgage agreement with MERS and claims any documentation of such an agreement was procured through fraud and forgery.  Due to the limited scope of this Letter Opinion, I do not find it necessary or appropriate to consider those arguments here.

11, 2011, refiled a writ of *levari facias* in the Plaintiff's name in the Superior Court of Kent County. In that action, Judge Witham directed the attorney for the Plaintiff "to submit a memorandum detailing the history of the mortgage and explaining the significance of the assignment," and informed the Defendant "that he could file a motion to vacate default judgment if he wished to contest its legitimacy."[3] Although he saw "little merit in any of [the] Defendant's claims," Judge Witham's review of the agreements provided in the Plaintiff's memorandum alerted him to a "much more significant issue"—the mortgage and note did "not appear to be properly sealed."[4] Noting that "[a] mortgage must be under seal for it to be enforced at law," and that the court "may raise the issue of subject matter jurisdiction *sua sponte*," Judge Witham ruled *sua sponte* that the mortgage was not properly sealed and "[t]hus, under Delaware law . . . can only be enforced at equity."[5] As a consequence, Judge Witham dismissed the case in the Memorandum Opinion and Order of October 19, 2011 (the "Superior Court Order"), "[p]ursuant to Delaware Superior Court Civil Rule 12(h)(3) and 10 Del C. § 1902 . . . without prejudice, to be filed within 60 days of this Order in the Court of Chancery."[6]

---

[3] *Mortg. Elec. Registration Sys., Inc.*, 2011 WL 5316766, at *1.
[4] *Id.*
[5] *Id.* at *2.
[6] *Id.*

3

MERS began the process of transferring its case nearly a month later, on November 17, 2011, by filing a written election to transfer to this Court. The Superior Court approved that request on November 18, 2011. However, the Plaintiff did not actually file its Complaint in this Court until a year and a half after the Superior Court Order—on May 8, 2013. In the meantime, on January 9, 2012, the Defendant and his wife brought a *pro se* action in Superior Court against the Plaintiff and its attorney alleging fraud, forgery, perjury, defamation, conspiracy, malicious prosecution, and deceptive trade practices, all arising out of the foreclosure action. In decisions of July 20, and November 30, 2012, Judge Witham granted a judgment against the Strongs on all counts.[7] After unsuccessfully petitioning Judge Witham to hear reargument, the Strongs appealed to the Supreme Court on January 29, 2013. The Supreme Court never reached the merits of the case, though, as the Strongs and the Plaintiff voluntarily filed a stipulation of dismissal on May 3, 2013, which the Court approved on May 6, 2013. Two days later, on May 8, 2013—more than 18 months after the Superior Court Order dismissed the original foreclosure action—the Plaintiff filed its Complaint in this Court.

In the Chancery Complaint, the Plaintiff, as the assignee of MERS, the nominee for MIT Lending, seeks an equitable foreclosure against the Defendant in

---

[7] *Strong v. Wells Fargo Bank*, 2012 WL 3549730 (Del. Super. July 20, 2012); *Strong v. Wells Fargo Bank*, 2012 WL 6961995 (Del. Super. Nov. 30, 2012).

the form of a *scire facias sur mortgage* action. The Defendant moved *pro se* to dismiss the Complaint under Court of Chancery Rules 12(b)(1)–(6), arguing, among other things, that the Plaintiff had failed to transfer the case according to the Superior Court Order. The Master considered the parties' positions and issued a draft report, adopted with modifications as the final Master's Report, recommending dismissal of the Complaint "as having been untimely transferred from the Superior Court under 10 *Del. C.* § 1902."[8] In the Master's Report, the Master found that:

> MERS failed to follow the direct order of the Superior Court dated October 19, 2011, which mandated it to transfer its case to this Court within 60 days. MERS also failed to abide by the plain language of Section 1902, which required it to make the "usual deposit of costs in the second court" within 60 days.[9]

The Master noted Section 1902's admonition that the statute must be "liberally construed to permit and facilitate transfers of proceedings between the courts of this State in the interests of justice," and acknowledged the Plaintiff's argument that the equitable foreclosure action should be permitted to move forward notwithstanding the filing delay because "otherwise Strong would be unjustly enriched at the expense of the mortgage holder," but the Master ultimately determined that principles of equity favored upholding the 60-day requirement and

---

[8] *See Wells Fargo Bank, NA v. Strong*, 2014 WL 3530829, at *1 (Del. Ch. July 15, 2014).
[9] *Id.* at *3 (quoting 10 *Del. C.* § 1902).

dismissing the Complaint.[10]  In particular, the Master highlighted the Defendant's letter withdrawing the Supreme Court appeal of his action against the Plaintiff, in which the Defendant made clear that a principal reason he had agreed to abandon the appeal was that the Plaintiff's delay had led him to believe the Plaintiff had also abandoned the foreclosure proceedings.  In the Strongs' Motion to Withdraw the Appeal, they stated:

> In Judge Witham October 19, 2011 Decision it stated that Mers Attorney had 60 days to file their Supporting Affidavit and statement of the facts to Chancery Court this was never executed . . . . [Due to Plaintiff's] Law firm Refusal to Comply to the Chancery Court Rules against Accepted the Transfer and Never Created a Court docket or number it has been over two years since, The 60 Days' time Allowed Have expired for more than two years.  This issue is Mute.  And Due to other prior Chancery court Ruling and the Delaware Attorney General Complaint this wouldn't stand a Chance in Chancery Court.
> …
> Wherefore Appellants Earl Strong and Lillie Strong ask this SUPREME COURT to Withdraw Appellants Appeal, we no longer want to pursue this Appeal because Judge Witham is an Honorable Respectable Judge, and As was stated Appellants doesn't want another Piece of the Pie. [11]

Thus, the Master concluded in the Final Report:

> It appears from these excerpts that after years of litigation between the parties, Strong voluntarily withdrew his Supreme Court appeal because he believed that Wells Fargo had abandoned its efforts to foreclose on his home.  By withdrawing his appeal, Strong gave up the possibility—no matter how remote—of obtaining monetary

---

[10] *Id.* at *3–4.

[11] Appellant's Response to Wells Fargo Answering Br. and Appellant's Mot. to Withdraw the Appeal at 4–5, 7, *Strong v. Wells Fargo Bank*, No. 37,2013 (Del.) (No. 15), *quoted in Wells Fargo Bank, NA v. Strong*, 2014 WL 3530829, at *4.  This excerpt from the Defendant's *pro se* filing appears in its unedited form.

damages from Wells Fargo and Barnett for what he contended were their fraudulent practices, among other claims of alleged misconduct. Thus, even if I were to ignore the plain language of 10 *Del. C.* § 1902 requiring the transfer of a case to another court to occur within 60 days from the date of the order denying the jurisdiction of the first court, I would have to conclude that it would be contrary to the general equitable principles of right and justice to allow Wells Fargo's complaint to proceed after Strong voluntarily dismissed his appeal in the Supreme Court.[12]

Following the release of the Master's Report, the Plaintiff, pursuant to Court of Chancery Rule 144, filed the exceptions that are before me now. Specifically, the Plaintiff raises one issue for review: Does the Plaintiff's failure to comply with Judge Witham's October 19, 2011 Order, as well as Section 1902, which required this action be filed within 60 days of the order, bar further litigation here? I conducted a hearing on these exceptions in court on October 24, 2014.

## II. STANDARD OF REVIEW

This Court reviews the legal and factual findings of a Master's report *de novo*.[13]

## III. ANALYSIS

In this action, the Plaintiff seeks to pursue an action to enforce an equitable mortgage filed in Superior Court, pursuant to the transfer statute, 10 *Del. C.* § 1902. Delaware, nearly uniquely among the states, preserves the distinction

---

[12] *Wells Fargo Bank, NA v. Strong*, 2014 WL 3530829, at *4.
[13] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

between law and equity.[14] The Court of Chancery's jurisdiction is limited, generally speaking, to those situations where an adequate remedy is unavailable at law;[15] conversely, again speaking generally, the Superior Court is without jurisdiction to entertain equitable actions or provide equitable remedies.[16] The law of this case, as found by the Superior Court, is that the Plaintiff's attempt to proceed in Superior Court was in fact an attempt to enforce an equitable mortgage, because the mortgage document on which it attempted to rely was unsealed and thus legally insufficient. Therefore, the Superior Court dismissed the matter as outside its jurisdiction, subject to transfer under Section 1902.

At common law, the Plaintiff, having chosen to bring suit on the wrong side of the law/equity divide, would have been without remedy. This harsh effect has been mitigated by statute. Title 10, Section 1902 of the Delaware Code provides that:

---

[14] *See, e.g.*, *Monroe Park v. Metropolitan Life Ins. Co.*, 457 A.2d 734, 738 (Del. 1983) ("[I]n Delaware there remains an historic and constitutional separation of law and equity. Indeed under article IV, section 7 of the Delaware Constitution, the Superior Court's jurisdiction relates to all civil causes at 'common law' while article IV, section 10 and 10 Del. C. § 341, make clear the Court of Chancery's jurisdiction to hear and determine all matters and causes in equity.").

[15] *See* 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

[16] *Compare* Del. Const. art. IV, § 7 ("The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all the other jurisdiction and powers vested by the laws of this State in the formerly existing Superior Court . . . ."), *and* 10 *Del. C.* § 541 ("The Superior Court shall have such jurisdiction as the Constitution and laws of this State confer upon it."), *with* Del. Const. art. IV, § 10 ("This [Court of Chancery] shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery."), *and* 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity.").

No civil action . . . brought in any court in this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter . . . . Such proceeding may be transferred to an appropriate court for hearing and determination, *provided that the party otherwise adversely affected*, *within 60 days after the order denying the jurisdiction of the first court has become final*, files in that court a written election of transfer, discharges all costs accrued in the first court, and *makes the usual deposit for costs in the second court*.[17]

Under the statute, actions transferred relate back to the filing in the first court.[18]

The Plaintiff did file a timely election of transfer. It now seeks to proceed on the Superior Court action, transferred to this Court. Because the Plaintiff failed to comply with the language in italics above, however—that is, because it failed to file its Complaint along with the required filing fee within 60 days—the Master found that transfer under the statute had not been effected, and that this action must be dismissed.

I concur with the Master's findings of fact and conclusions of law in this regard. While the statute provides that it must be "liberally construed . . . in the interests of justice,"[19] the Plaintiff does not suggest a construction of the statute with which it has complied. Instead, it makes a plea for equity, suggesting that the time limitation of the statute should be relaxed to prevent unjust enrichment on the part of the Defendant. Here, the Plaintiff missed the 60-day requirement for filing

---

[17] 10 *Del. C.* § 1902 (emphasis added).

[18] *See id.* ("For the purpose of laches or of any statute of limitations, the time of bringing the proceeding shall be deemed to be the time when it was brought in the first court.").

[19] *Id.*

in this Court *by over 16 months*. Counsel's explanation of this fact is only that his predecessor misunderstood the requirements of the statute and perhaps was distracted by the ongoing litigation in the Superior Court.[20] This does not strike me as excusable neglect; in any event, the "construction" the Plaintiff seeks would, effectively, write the 60-day transfer requirement completely out of Section 1902. Moreover, the Defendant dismissed his Supreme Court appeal of the related fraud action in reliance on the Plaintiff's failure to pursue its mortgage claim in this Court, so I am unable to say that the delay has worked no prejudice. Therefore, the Plaintiff is not entitled to a transfer under Section 1902, and this action is a nullity.

The effect of this finding on the Plaintiff's claim is dependent on the interpretation of the Superior Court Order. That Order, consistent with Section 1902, required the Plaintiff to file in Chancery within 60 days—a directive with which the Plaintiff, as described above, failed to comply. Specifically, the Superior Court Order provides that "this Court hereby dismisses this case, without prejudice, to be filed within 60 days of this Order in the Court of Chancery." If the Superior Court Order is read as an unconditional dismissal without prejudice, then nothing in Section 1902 prevents the Plaintiff from re-filing this matter in Chancery as a new complaint, albeit without the benefit of the filing date relating

---

[20] Oral Arg. Tr. 9:8–10:5.

back to the original Superior Court complaint.[21] On the other hand, if the Superior Court Order is read as providing for a dismissal without prejudice *conditioned upon* compliance with the requirement to file in Chancery within 60 days, the matter may be considered dismissed with prejudice. Obviously, any decision on my part upon this issue in this Letter Opinion would be advisory. I would suggest that, should the Plaintiff find it appropriate to file a new action seeking enforcement of an equitable mortgage against the Defendant, the Plaintiff seek clarification of, or relief from, the Superior Court Order in that Court.

## IV. CONCLUSION

After a *de novo* review of the facts and law, I find that the Plaintiff's attempt to transfer this action from Superior Court was untimely. Consequently, the Exception to the Master's Report is denied, and this action must be dismissed without prejudice. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[21] I make no decision on whether such an action would be time-barred under the doctrine of laches or by analogy to the statute of limitation.