# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:  January 17, 2019
Draft Report:   July 26, 2018
Date Submitted:   November 29, 2018

Jamie C. King, Esquire
Tunnell & Raysor, P.A.
30 East Pine Street
PO Box 151
Georgetown, DE 19947

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell, LLC
Georgetown Professional Park
20175 Office Circle
Georgetown, DE 19947

RE:   *Cache Private Capital Diversified Fund, LLC v. Cove at Sandy Landing, LLC, et al.*   C.A. No. 12511-MG

Dear Counsel:

Pending before me is an action filed by a creditor seeking personal and *in rem* judgments on a note secured by a mortgage on property owned by debtors, which are limited liability companies, and a personal guaranty executed by the individual who is the sole member and manager of those limited liability companies.  Subsequent to the execution of those documents, the parties entered into a forbearance agreement.  Creditor alleges that the debtors defaulted on the

note and the forbearance agreement, and seeks to foreclose on lots and boat slips it alleges are secured by the mortgage and to enforce the terms of the forbearance agreement. Debtors admit default on the note but deny default on the mortgage and, in their counterclaim, argue that the mortgage is unenforceable because it was not executed by the actual property owner, and that the boat slips are not subject to the mortgage. Creditor filed a motion for summary judgment. For the reasons below, I recommend that the Court grant the creditor's motion for summary judgment, dismiss the debtors' counterclaim with prejudice, and order the entry of personal and *in rem* judgments against the debtors, and other relief, following supplemental proceedings. This is a final report.

## I. Background

On March 19, 2014, Cove at Sandy Landing LLC, a foreign limited liability company organized under the laws of Maryland ("Cove MD") and Meris Properties LLC ("Meris"), a limited liability company organized under the laws of Delaware, executed a note (the "Note") with Cache Private Capital Diversified Fund, LLC ("Cache"), obligating them to pay a principal amount of $1,192,500.00, plus interest, charges and costs.[1] A mortgage and security agreement (the "Mortgage") on real properties in The Cove at Sandy Landing community ("Sandy Landing") in Sussex County, Delaware, was executed, on the same date, to secure

the debt.[2] The Mortgage was not under seal. In addition to listing Meris as a borrower, the Mortgage listed Cove MD as a borrower at the beginning of the document and, alternatively, Cove at Sandy Landing LLC, a limited liability company organized under the laws of Delaware ("Cove DE") as borrower and signatory at the end of the document. Michael Daniels ("Daniels"), who is the sole member of Cove MD, Cove DE and Meris, signed the Mortgage as sole member and manager of Meris and of Cove DE.

The Note obligated Cove MD and Meris to make monthly interest payments beginning April 15, 2014, with a single balloon payment of the principal and all accrued and unpaid interest due in full upon maturity on December 19, 2014.[3] It also provided for late charges for delinquent payments, additional late charges based upon the remaining principal balance every 30 days that the payment remains unpaid, a post-maturity date or acceleration interest rate upon default, and acceleration of all amounts due and owing under the Note, without notice, upon default. The makers of the Note are Cove MD and Meris, with Daniels executing the Note for both entities. In addition, on March 19, 2014, Daniels executed a

---

[1] Docket Item ("D.I.") 1, Ex. B, at 1.

[2] *Id.*, Ex. A.

[3] *Id.*, Ex. B., at 1.

personal guaranty for payment of the loan debt and for performance under the Note.[4]

On December 15, 2014, Cove MD and Meris entered into an Inducement, Forbearance and Security Agreement ("Forbearance Agreement") with Cache.[5] In the Forbearance Agreement, they acknowledged that Cove MD executed and delivered the Mortgage and other loan documents dated March 19, 2014; the loan was fully drawn; Cove MD and Meris have "failed to make payment of either principal or interest when due on the Loan," or anticipatory breach has occurred; Cache has declared default on the loan and Cove MD and Meris have received notice of default; and Cache has the present right to declare the indebtedness under the loan due and to exercise the remedies available to it against the security or Meris or Cove MD. In return for Cache's agreement not to exercise its rights and remedies because of the default during the forbearance period (until January 15, 2015), Cove MD and Meris agreed to post a $82,120.50 cash bond with the Delaware Department of Transportation ("DelDOT"), pay Cache $45,000.00 as soon as it receives proceeds from cash bonds that they have posted with DelDOT and with the Department of Finance of Sussex County, Delaware ("Sussex County"), and grant Cache a security interest in those bonds. The Forbearance

---

[4] *Id.*, Ex. F.

[5] *Id.*, Ex. C.

Agreement preserved Cache's right to pursue its rights and remedies with respect to the Loan, and noted that Cove MD's and Meris's liabilities remain "in full force and effect."

On June 28, 2016, Cache filed a complaint pursuant to 10 *Del. C.* § 3901 against Cove MD, Cove DE, Meris, and Daniels.[6]  Other parties were joined for notice purposes only.[7]  Cache alleges that Cove MD and Meris are in default under the Note and Forbearance Agreement for failing to make payments as required in those documents, and seek payment of $1,690,674.90, including principal and cash bond amounts[8] totaling $1,041,275.11, $642,360.54 in interest as of May 15, 2016 and interest at 36% per annum from that date, late charges of $7,039.25, and reasonable attorneys' fees and costs.  It seeks *in rem* judgment on the Mortgage in that amount against Cove MD, Cove DE, and Meris and personal judgment on the Note in that amount against Cove MD, Cove DE, Meris and Daniels, as guarantor of the Note.  It also seeks to foreclose on eight lots and 20 boat slips it claims are secured property under the Mortgage and to obtain an order for a sheriff's sale, and

---

[6] These parties are collectively referred to as "defendants" in this report.

[7] The parties joined for notification only were Sussex County, DelDOT, CASL LLC, and The Cove at Sandy Landing Property Owners Association, Inc. (the "Association").  No judgment or costs are being sought against those parties.

[8] The cash bond amounts claimed include $82,120.50 for a cash bond with DelDOT that Cache asserts it put up for Cove MD and Meris, and $12,300.00 it purportedly paid to a contractor to avoid forfeiture of a cash bond.

that DelDOT, Sussex County and the Association be enjoined from sending money to Daniels, and Cove MD be enjoined from enjoying proceeds from the sale of boat slips, pending resolution of this case.

In their July 20, 2016 answer and counterclaim for declaratory judgment, Defendants deny default under the Mortgage, but admit that Cove MD and Meris are in default on the Note.[9] Defendants argue that the mortgage is unenforceable because it was not executed by the actual property owner and the Mortgage, if valid, does not identify the boat slips as security and, therefore, does not create a lien on the boat slips. And, they claim Cache has unclean hands because it has interfered with the marketing of the property and has overreached in its calculations of amounts due and claims of a lien.[10]

Cache's response to the counterclaim reiterates that the boat slips are collateralized property, Cove MD is identified as the mortgagor, and defendants have unclean hands because they misrepresented their application and use of loan proceeds and the completion of the development, and fraudulently retained monies from the sale of collateralized property.[11]

---

[9] D.I. 3, ¶ 26. Defendants also assert that Cove DE is not in default because it did not execute the Note. *Id.* Defendants argue that Cove MD and Meris have failed to pay the loan balance due because Cove MD has been "unable to market the lots properly to generate the funds necessary for repayment." *Id.,* ¶ 23.

[10] *Id.*, ¶ 35.

[11] D.I. 4, at 2-4.

On February 28, 2018, Cache filed a motion for summary judgment claiming that there is no genuine issue of material fact in dispute and it is entitled to judgment as a matter of law. Cache argues that the Mortgage, Note and Forbearance Agreement were executed by Cove MD and Meris, because Cove MD was identified on the first page of the Mortgage as the borrower and, in the Forbearance Agreement, Cove MD and Meris admitted they entered into the mortgage regarding the property and that the loan was in default.[12] Further, Cache alleges that the Mortgage covers the boat slips, which are secured property owned by Cove MD, as evidenced by the conveyance by deed of a boat slip by Cove MD.[13] It seeks personal and *in rem* judgments against Cove MD and Meris, and a personal judgment against Daniels, other relief as requested, and dismissal of defendants' counterclaim with prejudice.

Defendants respond that Cove MD and Cove DE are separate entities.[14] They claim that the Mortgage is invalid because it was signed by Daniels as sole member and manager of Cove DE, and Cove MD is the entity that is obligated under the Note for the debt. And, the Forbearance Agreement was not recorded so

[12] D.I. 11, ¶¶ 10-12, 16.

[13] D.I. 14, at 8-9.

[14] Defendants state that Daniels typically holds each subdivision that he develops in a separate limited liability company. D.I. 12, at 3.

it does not modify the Mortgage to correct the borrower's signature.[15]  They also argue that, even if the Mortgage is valid, it does not include the boat slips as part of the security.  The boat slips are not located or erected on land; the land upon which the boat slips are built is owned or controlled by the State of Delaware, consistent with the subaqueous lands lease through which the boat slips were built; and neither Cove MD nor Cove DE is a party to the subaqueous lands lease.[16]  Defendants also claim that two of the lots and two of the boat slips subject to this action are owned by non-parties to the case.[17]

I issued a draft report on July 26, 2018, and the defendants filed a notice of exceptions on July 30, 2018, which were briefed.[18]  I have either modified the report to address the exceptions taken, or consider them adequately addressed in this report.

---

[15] *Id.,* at 12-13.

[16] They assert that the subaqueous lands lease at issue is personal to the Association. *Id.* at 15.

[17] *Id.* at 13.  Cache, in its reply brief, admits two of the lots and related boat slips have been conveyed to third parties during the pendency of this action with its approval, and it is not seeking action with regard to those lots and boat slips. D.I. 14, at 7-8.  Cache lists Parcels 242 and 161, Unit 4, and Unit 7 as the affected property; but, Parcel 242 does not appear to be part of the subject property, and I surmise, based upon documents in the court record, that the second parcel to be eliminated from this action is likely Parcel 342.  Accordingly, the appropriate lots and boat slips will need to be clarified and excluded from the secured property being foreclosed upon in this action.

[18] There was an issue whether the defendants waived their exceptions due to their failure to file their opening brief in compliance with Rule 144(d)(1), which I resolved by

## II. Standard of Review

The standard for reviewing a motion for summary judgment under Court of Chancery Rule 56 is well-known. Summary judgment is appropriate only where "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[19] The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[20] Once the moving party has satisfied that burden, it falls on the non-moving party to show that there are factual disputes. It may not rest upon the mere allegations or denials contained in its pleading, but must present specific facts showing that there is a genuine issue for trial.[21] Evidence must be viewed "in the light most favorable to the non-moving party."[22]

## III. Analysis

### A. Enforceability of the Mortgage

---

enlarging the time for the defendants to file their opening brief in support of their exceptions. *See* D.I. 20.

[19] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

[20] *Wagamon*, 2012 WL 1388847, at *2; *Lundeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *5 (Del. Super. Aug. 31, 2006).

[21] *E.g.*, *Wagamon*, 2012 WL 1388847, at *2; *Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630, at *2 (Del. Super. Nov. 17, 2011) (citation omitted).

[22] *Williams v. Geier*, 671 A.2d 1368, 1389 (Del. 1996) (citing *Merrill v. Crothal-American, Inc.*, 606 A.2d 96, 99 (Del. 1992)).

Defendants argue that the defect in execution of the Mortgage makes it unenforceable. They claim that the proper party – Cove MD, the real property owner – did not execute the Mortgage, and that the Forbearance Agreement was not recorded so it is not effective under 25 *Del. C.* § 2101(b). Cache asserts that the Mortgage is enforceable because Cove MD was identified in the Mortgage as the borrower initially, and that the Forbearance Agreement, in which Cove MD and Meris admitted they entered into the Mortgage and executed the Note and acknowledged the debt and default on the loan, confirmed Cove MD's intent to obligate itself on the Mortgage and the loan.

There are two types of mortgages: legal and equitable.[23] Foreclosure of an equitable mortgage is within the jurisdiction of the Court of Chancery.[24] A mortgage "is a conveyance of an estate, by way of pledge for the security of debt, and to become void on payment of it."[25] "The *sine qua non* of a 'mortgage' is not the form of the document but the intention of the parties to secure a debt with a pledge of real property."[26] The Delaware Supreme Court recognized the Court of Chancery's "equitable power to disregard defects in the execution of a mortgage,"

---

[23] *Handler Const., Inc. v. CoreStates Bank, N.A.*, 633 A.2d 356, 363 (Del. 1993).

[24] *Id.* (citing *Monroe Park v. Metro. Life. Ins. Co.*, 457 A.2d 734, 737 (Del. 1983)). *See also* 25 *Del. C.* § 2101(b), which was amended to allow foreclosure of mortgages not under seal in the Superior Court, effective June 28, 2016.

[25] *Handler Const., Inc.*, 633 A.2d at 363.

based upon the principles that "(1) equity regards substance rather than form," and (2) "equity regards that as done which in good conscience ought to be done."[27] Further, Delaware's "form of mortgage" statute expressly states that "documents not conforming with its prescribed pattern may nevertheless be valid and fully effectual."[28] The key to establishing an equitable mortgage is the intent of the parties to create a mortgage or lien on secured property.[29] Substance transcends form and instruments intended as mortgages to pledge property to secure debts are enforceable as equitable mortgages, even if they are not regarded as legal mortgages because of defects.[30]

In this case, there are no genuine issues of material fact regarding the Mortgage, Note or Forbearance Agreement. The Mortgage listed Meris and Cove MD as borrowers at the beginning of the document and listed Meris and Cove DE as borrower and signatory at the end of the document. Daniels signed to execute the Mortgage in March 2014. Meris and Cove MD are the makers of the Note, and

---

[26] *Id.* (citation omitted).

[27] *Monroe Park*, 457 A.2d at 737; *see also Handler Const., Inc.*, 633 A.2d at 363; *OneWest Bank, F.S.B. v. Feeney*, 2013 WL 5977066, at *6 (Del. Ch. June 27, 2013).

[28] *Handler Const., Inc.*, 633 A.2d at 363 (citing 25 *Del. C.* § 2101(c)).

[29] 59 C.J.S. Mortgages § 36 (June 2018 Update).

[30] 59 C.J.S. Mortgages § 45 (June 2018 Update) (noting that an equitable mortgage can be enforced where the defect in the mortgage is that "it is not recorded . . .; it lacks a seal; it is not signed by the mortgagor, provided that it is otherwise regular and is duly

Daniels executed that document for those entities. On December 15, 2014, a few days before the balloon payment under the Note was due, Meris and Cove MD executed a Forbearance Agreement, in which they acknowledged that they had executed the Mortgage and Note, received the full amount of the loan proceeds, the loan was in default, their liabilities remained, and Cache's rights and remedies under the loan documents were preserved, and agreed to a waiver of claims.[31] They also agreed to comply with certain payments and conditions in order to prevent Cache from pursuing its rights and remedies under the loan documents during the forbearance period.

The issues relate to the parties' differing interpretations of how the law applies to these facts. The Mortgage is defective, both because it is not under seal, which is a technical defect, and because the mortgagor, Cove MD, did not formally

---

acknowledged by him or her; it is not acknowledged according to the requirements of the law").

[31] In the Forbearance Agreement, Cove MD and Meris waived and released

> any known or unknown claims, counterclaims, causes of action or suits ("*Claims*") of any kind, character, or nature whatsoever, fixed or contingent with any acts of commission or omission by [Cache] existing or occurring on or prior to the date of this [Forbearance] Agreement including but not limited to any and all causes of action that may be derived from the Loan or the Loan Documents.

D.I. 1, Ex. C, §VI(L), at 4. Although not asserted by Cache, there is an argument that, through the Forbearance Agreement, Cove MD and Meris waived any claims or counterclaims they may have related to defects in the Mortgage.

sign the Mortgage as the borrower.[32]   Under this Court's equitable power to

disregard defects in the execution of the Mortgage in order to enforce an equitable

mortgage, I find that the Mortgage is enforceable as an equitable lien.   The

evidence presented shows that Meris and Cove MD intended to create a mortgage

lien on the property.   The Mortgage designated Meris and Cove MD as the

borrower at the inception of the Mortgage document, although another entity, Cove

DE, was listed as the signatory under the Mortgage.   Daniels executed the

document and he was the sole member for all entities.   And, the loan documents

show both Cove MD and Cove DE as having the same address.   These

circumstances, when considered as a whole, support a finding that the alternative

reference to Cove MD and to Cove DE was an error in form and not in substance.[33]

---

[32] It is undisputed that the Mortgage is not under seal, which is a technical defect that does not affect its enforceability as an equitable mortgage. *See e.g., Handler Const., Inc.,* 633 A.2d at 363; *Monroe Park v. Metro. Life. Ins. Co.*, 457 A.2d 734, 736 (Del. 1983) (citation omitted).

[33] In their exceptions, the defendants argue that this finding disregards that Cove MD and Cover DE were different corporations and that the Mortgage and Note were executed by two separate legal entities when the law requires them to be inseparable. D.I. 21, at 3-5.  I concur that the note and mortgage are inseparable in that the mortgage holder must have an interest in the note to foreclose on the mortgage. *See Shrewsbury v. The Bank of New York Mellon*, 160 A.3d 471, 476 (Del. 2017).  Here, the same entity executed both the Note and Mortgage because an equitable mortgage was established with Cove MD as mortgagee, who also executed the Note.  The defendants assert that Cache should have sought to reform the Mortgage. D.I. 21, at 3-4.  Reformation is "appropriate only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence." *CC Fin. LLC v. Wireless Properties, LLC*, 2012 WL 4862337, at *6 (Del. Ch. Oct. 1, 2012) (citation omitted).  This situation is distinct from reformation because the evidence

The Forbearance Agreement further shows Cove MD intended to execute the Mortgage and, in fact, understood that it had done so. I do not find defendants' argument – that the Forbearance Agreement is ineffective because it was not recorded – persuasive. Forbearance agreements do not have to be recorded to be effective and the same statutory provision (that mortgages that are not in the prescribed form are not invalidated) would apply to forbearance agreements acting as a mortgage lien and/or conveying property interests.[34] And, in this action, the Forbearance Agreement is being relied on as evidence of Cove MD's intent to be bound by the equitable mortgage or lien and not to convey a property interest. Here, I find that there is no genuine issue of a material fact regarding the Mortgage's enforceability and it is valid as an equitable lien against Cove MD.

## B. Boat slips as secured property under the Mortgage

Defendants argue that the boat slips at issue in this action are not part of the security under the Mortgage since they are not located or erected on land; the

---

supports that the Mortgage represents the parties' intent – Cache and Cove MD both intended to, and did, enter into the Mortgage agreement. There was no mutual mistake (i.e., the parties did not mistakenly think that Cove DE was the property owner), but a clerical error.

[34] *See* 25 *Del. C.* § 2101(c); *see also Reserves Mgmt. Corp. v. R.T. Properties, LLC*, 80 A.3d 952, 956-57 (Del. 2013) (finding an unrecorded forbearance agreement does not lack legal force because it did not convey any interest in property). In this case, there is

"land" upon which the boat slips are built is owned by the State of Delaware, consistent with the subaqueous lands lease; and rights related to the boat slips fall to the Association, which leased the underwater land, and not Cove MD or Cove DE.[35] Cache claims the boat slips are secured property under the Mortgage since the Mortgage covers all improvements, structures, additions, extensions, modifications and improvements "now or hereinafter erected or located on the Land," and all leases "affecting the use, enjoyment or occupancy of the land and/or the improvements heretofore or hereafter entered into."[36] It argues the boat slips are a continuation of the Sandy Landing development, as identified on the development's site plan of open space, and Cove MD has conveyed rights to the boat slips by deed.[37]

I find there is no genuine issue of material fact concerning whether boat slips affiliated with the lots at issue are secured property under the Mortgage. The Mortgage grants a security interest in property owned or subsequently acquired by Cove MD and Meris, including land as described in Exhibit A to the Mortgage, which specified eleven lots in Sandy Landing as shown on the recorded plot;

---

no evidence presented that there is a third party purchaser whose rights are affected because of the lack of a recorded property interest.

[35] D.I. 12, at 13-15.

[36] D.I. 1, Ex. A, Art. I, §1.1 (c), (f).

[37] D.I. 14, Ex. A.

additional land, estates and development rights later acquired in connection with the land or development of the land, if "expressly made subject to the lien of this [Mortgage]";[38] improvements, structures, additional, extension, modifications "now or hereafter erected or located on the land"; and all leases affecting the use or enjoyment of the land and/or improvements "heretofore or hereafter entered into."[39] The Mortgage also assigned all the defendants' "rights, title and interest in and to all current and future [l]eases."[40] It also defines property, for purposes of the Mortgage, to "include any portion of the Property and any interest therein."[41]

The boat slips were built under a 20 year subaqueous lands lease granted by the Department of Natural Resources and Environment Control ("DNREC") to the Association, with Daniels as the Association's representative, on January 7, 2014.[42] That lease authorized the construction and operation of a community marina, and was granted "for the purpose of providing slips for up to 22 vessels belonging to

---

[38] D.I. 1, Ex. A, Art. I § 1.1. Cache initially argued this Mortgage applied in this instance without direct reference to the need for a supplemental mortgage or other express obligation to subject additional land to the Mortgage. Defendants countered that this provision does not apply since no supplemental lien occurred regarding the boat slips. I agree with defendants that this Mortgage provision does not appear to be applicable here.

[39] *Id.*

[40] *Id.*, Art. I § 1.2.

[41] *Id.*, Art. 20.

[42] D.I. 12, Ex. I.

the residents of The Cove at Sandy Landing Homeowners Association."[43]   The

structures authorized to be constructed were a pier, dock, 10 finger piers and 24

freestanding pilings "waterward of the approximate mean low water line."[44]   The

construction was phased-in and contingent upon the provision of "letters of intent

to purchase a boat for use at the marina that correspond to lots sold within the

community."[45]   And, boat slips constructed under the subaqueous lands lease have

been conveyed by deed, with Cove MD conveying the property as the "seller."[46]

---

[43] *Id.*, at 3.  The lease also indicated that it was "personal and may not be transferred without the prior written consent of the Department." *Id.*, at 5.

[44] *Id.*, at 2.

[45] And, approval to construct additional phases are contingent upon DNREC receiving "evidence of individual lot ownership and corresponding boat registrations for the existing and proposed slips." *Id.*

[46] D.I. 24, Ex. E.  Cache and Cove MD and Meris executed a partial release of mortgage related to certain "lands and premises," which is described as boat slip #7 and identified as on the recorded site plan for Sandy Landing. D.I. 14, Ex. A.  And, the conveyance of rights and interests in a boat slip in Sandy Landing stated that the boat slip is identified the site plan of Sandy Landing; is part of the "same land" conveyed to Cove MD by C.V. Townsend, III on November 20, 2012 and designated as Sandy Landing; is subject to the terms and conditions of the subaqueous lands lease between the Association and DNREC; and is restricted to those owning real property in Sandy Landing, so that if a boat slip interest is conveyed to a non-property owner, then the interest reverts to the Association. *Id.*, Ex. E, at 2.  These conveyances support that boat slip interests do not exist independently from property ownership in Sandy Landing but are integrated with land rights, and subject to the Mortgage.  In their exceptions, the defendants argue that the Association – not Cove MD – owns the subaqueous lands lease rights, which are personal to the Association and cannot be transferred to a third party without DNREC's written consent, so boat slips' rights are not an extension of the Mortgage. D.I. 21, at 6. In this case, the subaqueous lands lease is not being transferred – that lease remains between the Association and DNREC, and interests in boat slips conveyed to Sandy Landing property owners are subject to the terms of the subaqueous lands lease, even if being foreclosed upon.  It seems disingenuous for the defendants to claim that Cove MD

I find the boat slips, so long as they are affiliated with the lots described in Exhibit A to the Mortgage, represent an interest in property subject to the Mortgage. The boat slips are not "land" under the Mortgage but interests of the secured property and some aspect of the marina (i.e., a pier or dock), which houses the boat slips, necessarily touches the land designated open space of the development. Rights to the boat slips arise out of the subaqueous lands lease and, although the Association, not Cove MD, is the party to that lease, that lease is directly connected with lots that are secured property under the Mortgage. The subaqueous lands lease states that it authorizes a marina for the purpose of providing slips for lot owners in the community, and that approval to construct boat slips was contingent upon providing proof that individual lot owners had boats they sought to keep at the marina. The subaqueous lands lease affects the "use or enjoyment of" the lots and Cove MD and Merit agreed, through the

---

has no rights associated with the boat slips, since the evidence shows Cove MD has been the entity deeding interests in boat slips and profiting from those conveyances. The defendants also assert that Cache failed to join the Association and DNREC in the lawsuit. The Association is named as a nominal party to receive notice (with a potential interest) in the action. Further, under Court of Chancery Rule 19(a), the Court determines whether an absent person should be party to the litigation because they have an interest in the subject of the action which, if they are not included, will mean that disposition in the case will injure their rights or subject them to substantial risk of multiple or inconsistent obligations related to that interest. Ct. Ch. R. 19(a). The defendants have not shown how the Association's or DNREC's interests would be injured through this litigation, since boat slip interests are subject to the subaqueous lands lease and the Mortgage was in place prior to that lease.

Mortgage, to assign all of their rights or interest in leases to Cache. Further, the provisions in the subaqueous lands lease and Cove MD's conveyances of boat slips support that the boat slip interests are directly affiliated with property ownerships in Sandy Landing, and subject to the Mortgage.

## IV.    Conclusion

For the foregoing reasons, I recommend that the Court grant Cache's motion for summary judgment, dismiss defendants' counterclaim with prejudice, and order the entry of an *in rem* judgment on the Mortgage against Cove MD and Meris, and of personal judgments on the Note against Cove MD, Meris and Daniels, as guarantor of the Note, in an amount, and related to certain lots and boat slips, to be determined.[47]

And, I also recommend that the Court order Cache to file with the Court a detailed analysis setting forth the basis for its calculations as to the amount due under the Note, and to clarify the specific lots and boat slips that should be subject to foreclosure under the Mortgage consistent with this report, within 20 days of this report becoming final. Defendants will have 20 days from the date of Cache's submission to provide their response to the Court. The Court will then enter an

---

[47] Judgment should not be entered against Cove DE since this report has concluded that Cove DE has neither obligations, nor rights, under the Mortgage or Note. And, neither party presented factual support for their allegations regarding their affirmative defenses so there is no basis to conclude those defenses present a genuine issue for trial.

order detailing the final judgment amount and specific property to be foreclosed upon, and ordering a sheriff's sale of the secured property.  Further, I recommend that, as a part of the Court's order, DelDOT, Sussex County and the Association be enjoined from returning money from cash bonds related to actions of the Sandy Landing development to Daniels, and Cove MD be enjoined from keeping proceeds from the sale of boat slips, pending final resolution of this case.

This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery