IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| J.M. SHREWSBURY, a/k/a J. MICHAEL SHREWSBURY, and KATHY SHREWSBURY, | § § § § § | No. 306, 2016 |
| Defendants Below-Appellants, | § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | CA No. N15L-03-108 |
| THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-9, Mortgage Pass-Through Certificates, Series 2007-9. | § § § § § § § § § § | |
| Plaintiff Below-Appellee. | § § § | |

Submitted: February 8, 2017
Decided: April 17, 2017

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**

Cynthia L. Carroll, Esquire, Cynthia L. Carroll, P.A., Newark, Delaware, for Appellants, J.M. Shrewsbury, a/k/a J. Michael Shrewsbury and Kathy Shrewsbury.

Melanie J. Thompson, Esquire, Atlantic Law Group, LLC, Wilmington, Delaware, for Appellee, The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-9, Mortgage Pass-Through Certificates, Series 2007-9.

**VAUGHN**, Justice, for the Majority:

This is a mortgage foreclosure action brought by Appellee The Bank of New York Mellon, f/k/a The Bank of New York ("The Bank") against Appellants J.M. Shrewsbury and Kathy Shrewsbury. The Bank is not the original mortgagee. It received the Shrewsbury mortgage by an assignment from the original mortgagee. The Shrewsburys filed an answer to the complaint asserting that the note representing the debt secured by the mortgage had not been assigned to The Bank. They further asserted that since the note had not been assigned to The Bank, it did not have the right to enforce the underlying debt and, therefore, did not have the right to foreclose on the mortgage. The Superior Court rejected the Shrewsburys' argument and granted summary judgment to The Bank. The narrow question presented on appeal is whether a party holding a mortgage must have the right to enforce the obligation secured by the mortgage in order to conduct a foreclosure proceeding. For the reasons which follow, we hold that a mortgage assignee must be entitled to enforce the underlying obligation which the mortgage secures in order to foreclose on the mortgage.

## FACTS AND PROCEDURAL HISTORY

On May 15, 2007 J.M. Shrewsbury signed a promissory note in favor of Countrywide Home Loans, Inc. in the amount of $653,553.26. At the same time, J.M. Shrewsbury and Kathy Shrewsbury granted a mortgage to secure the debt upon

2

property they owned at 9 Barnesdale Drive, Middletown, Delaware. The mortgagee was Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Home Loans.

On June 6, 2011, Mortgage Electronic Registration Systems, Inc. assigned the mortgage to The Bank as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2007-9, Mortgage Pass-Through Certificates, Series 2007-9.

On or about July 1, 2010, the Shrewsburys stopped making payments on the mortgage. It is undisputed that the Shrewsburys have not made payments on the mortgage since then, or at least that no payments have been made for a substantial period of time.

The Bank commenced this mortgage foreclosure on March 20, 2015. As mentioned, the Shrewsburys filed an answer in which they asserted as a defense that the bank must show that it held the note, as well as the mortgage, in order to foreclose on the mortgage. After statutorily required mediation efforts proved unsuccessful, The Bank filed a motion for summary judgment. In their response to the motion, the Shrewsburys repeated their argument that The Bank must show that it held the note as well as the mortgage in order to conduct the foreclosure action. Attached to their response to the motion was an affidavit of Mr. Shrewsbury stating that in 2013

3

he requested and received a copy of the note from Residential Credit Solutions, Inc., the company servicing the loan. The note provided to Mr. Shrewsbury was a copy of the original note given to Countrywide Home Loans, Inc. with no notation or indication of any assignment.

In support of the motion, The Bank argued that the Shrewsburys had not pled an allowable defense. Relying upon the case of *Wells Fargo Bank, N.A. v. Nickel* and other Delaware precedents, The Bank argued that the limited, allowable defenses in a mortgage foreclosure action were payment, satisfaction or a plea in avoidance of the mortgage, and that a plea in avoidance "must relate to the mortgage sued upon, i.e. must relate to the validity or illegality of the mortgage documents."[1] The defense pled by the Shrewsburys, The Bank contended, did not satisfy that criteria.

The Superior Court rejected the Shrewsburys' argument, reasoning that The Bank need only show that it had a valid assignment of the mortgage, and that as a valid assignee of the mortgage, The Bank was the proper party to enforce the note.

---

[1] 2011 WL 6000787, at *2 (Del. Super. Nov. 18, 2011) (quoting *Am. Nat'l Ins. Co. v. G-Wilmington Assocs., L.P.*, 2002 WL 31383924, at *2 (Del. Super. Oct. 18, 2002)); *see also LaSalle Nat'l Bank v. Ingram*, 2006 WL 1679418, at *2 (Del. May 16, 2006); *Christiana Falls, L.P. v. First Fed. Sav. & Loan Ass'n of Norwalk*, 1986 WL 18356, at *1 (Del. Dec. 30, 1986); *Wilmington Trust Co. v. Bethany Group Ltd. P'ship*, 1993 WL 258686, at *2 (Del. Super. June 3, 1993); *Gordy v. Preform Bldg. Components, Inc.*, 310 A.2d 893, 895 (Del. Super. 1973).

It appears that in the proceedings in the Superior Court The Bank did not produce the note, claim to be the holder of the note, or claim to be entitled to enforce the note.[2]

## DISCUSSION

"This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[3]

On appeal, The Bank contends that it has been consistently held under Delaware law that a mortgagee's right to foreclose emanates from the mortgage, not the note.[4] Ownership of the related promissory note, which confers separate rights

---

[2] In its Statement of Facts in its brief on appeal, The Bank states that "[o]n an unknown date, the Note was endorsed by Countrywide Home Loans, Inc. in blank." Appellee's Answering Br. at 4. A copy of the note containing such an endorsement is in The Bank's appendix in this appeal. App. to Appellee's Answering Br. at 28-30. The Bank makes no argument on appeal concerning the note contained in its appendix. Under Delaware Supreme Court Rule 9, we hear an appeal on the record created in the trial court. Accordingly, we do not consider the Note contained in The Bank's appendix.

[3] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269-70 (Del. 2008)).

[4] The Bank cites the following Superior Court cases in support of its contention: *M&T Bank v. Watkins*, 2016 WL 4123903, at *2 (Del. Super. July 29, 2016) (citing *Deutsche Bank Nat'l Trust Co. v. Moss*, 2016 WL 355017, at *3 (Del. Super. Jan. 26, 2016) (quoting *HSBC Mortg. Corp. (USA) v. Bendfeldt*, 2014 WL 600233, *2 (Del. Super. Feb. 4, 2014), *aff'd* 2014 WL 4978666 (Del. Oct. 7, 2014))); *Davis v. 913 N. Mkt. St. P'ship*, 1996 WL 769326, at *1 (Del. Super. Dec. 12,

5

and remedies to its holder, it contends, is irrelevant to a mortgage holder's right to foreclose on the mortgage. It relies upon well-established authorities in this State which hold that a mortgage foreclosure action is an action based on a record, the record being the mortgage, with limited available defenses.[5]

Subject to statutory requirements not relevant here, the statute governing the commencement of a mortgage foreclosure proceeding provides, in pertinent part:

> [U]pon breach of the condition of the mortgage . . . by nonpayment of the mortgage money . . . the mortgagee . . . or [the mortgagee's] assigns may . . . sue out of the Superior Court . . . a writ of scire facias . . . commanding the sheriff to make known to the mortgagor . . . that the mortgagor . . . appear before the Court to show cause . . . why the mortgaged premises ought not to be seized and taken in execution for payment of the mortgage money.[6]

The term "mortgage money" in the statute is a synonym for the note (debt) that is secured by the mortgage.

> A complaint on a sci fa sur mortgage puts the existence of the mortgage debt in issue and orders the mortgagor to show cause why the mortgaged premises should not be taken in execution and sold to satisfy the debt. *See 2*

---

1996) ("The [] note and the mortgage confer separate rights and obligations. Thus, the [] note is a separate matter and is not part of the foreclosure action on the mortgage."); *Ryan v. Ryan*, 1989 WL 135711, at *1 (Del. Super. Nov. 2, 1989).

[5] 2 VICTOR B. WOOLLEY, WOOLLEY ON DELAWARE PRACTICE, § 1358 at 918, § 1371 at 926 (WM. W. Gaunt and Sons, Inc. 1985).

[6] 10 *Del. C.* § 5061.

6

> *Woolley* § 1358, at 918-19; id. § 1371; *Skelly*, 38 B.R. at 1002 n 4; 10 *Del. C.* § 5061. The sci fa proceeding may appear simple, because the facts are usually undisputed, but it is mortgagor's chance to litigate the existence of the debt and present any defenses. *See Gordy v. Preform Building Components, Inc.,* 310 A.2d 893, 895-96 (Del. Super. 1973).[7]

Until 1953, a Delaware statute defined the defenses that were available in a mortgage foreclosure proceeding.[8] The statute read as follows:

> The defendant in a scire facias on a mortgage, may plead satisfaction, or payment, of all, or any part of the mortgage money, or any other lawful plea in avoidance of the deed as the case may require.[9]

The statute was omitted from the code in 1953, but thereafter case law continued to recognize that the only defenses available in a mortgage foreclosure action were payment of the "mortgage money", satisfaction or a plea in avoidance of the mortgage.[10] The phrase "plea in avoidance" has sometimes been described as referring to a plea relating "to the validity or illegality or the mortgage documents," as reflected in the quotation set forth above from *Wells Fargo Bank,*

---

[7] *Matter of Celeste Court Apartments, Inc.,* 47 B.R. 470, 474 (D. Del. 1985).
[8] *Gordy*, 310 A.2d at 895.
[9] *Id*. (citing Revised Code of Delaware, 1935, par. 4859, Ch. 133, & 68).
[10] *See* cases cited *supra* note 1.

*N.A. v. Nickel* set forth above,[11] but a more apposite description of "plea in avoidance" appears in *Gordy v. Preform Building Components, Inc.*, where the phrase is described as referring to the common law plea known as confession and avoidance.[12] "Such plea admits the allegations of the complaint but asserts matter which destroys the effect of the allegations and defeats the plaintiff's right."[13] "[T]he allegation 'in avoidance' must relate to the subject matter of the complaint."[14] Examples of pleas in confession and avoidance are "act of God, assignment of cause of action, conditional liability, discharge, duress, exception or proviso of statute, forfeiture, fraud, illegality of transaction, nonperformance of condition precedent, ratification, unjust enrichment and waiver."[15] We consider the question presented in the framework of these well-established principles.

It has long been recognized in this State that "a mortgage is merely security for a debt, or for the performance of some other obligation."[16] The Delaware statute characterizes that debt as "mortgage money." A mortgage does not create a debt or obligation, it merely secures one. It has also long been recognized that an

---

[11] 2011 WL 6000787, at *2.
[12] 310 A.2d 893, 895 (Del. Super. 1973).
[13] *Id.*
[14] *Id.*
[15] *Id.* at 895-96.
[16] WOOLLEY, *supra* note 4, § 1353 at 914.

underlying debt or obligation is essential to a mortgage's enforceability. In *Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corporation*, this Court observed that a "debt, either in being, or created at the time or contracted to be created, is an essential requisite of a mortgage."[17] The Court supported this observation with a citation to *Carpenter v. Longan*, a United States Supreme Court case.[18] In *Carpenter*, the Supreme Court discussed the consequences of an assignment of a mortgage without an assignment of the underlying debt.[19] It observed that the "note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."[20]

Other respected authorities have also recognized that the holder of a mortgage must have an interest in the underlying debt or obligation to enforce the mortgage. In *Powell on Real Property*, the rule is bluntly stated as follows;

> It must be remembered that the mortgagee has two interests: (1) the debt or obligation which is owed to him, and (2) the security interest in land represented by the mortgage. . . . In fact, the primary interest is the personalty debt obligation. The interest in land which is available in case security is necessary because of the debtor's default is considered a collateral interest. Much trouble has been

---

[17] 25 A.2d 383, 389 (Del. 1942).
[18] 83 U.S. 271 (1872).
[19] *Id*.
[20] *Id*. at 274.

9

caused by mortgagees attempting to transfer only one of these two interests. Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee," having received no interest in the underlying debt or obligation, has a worthless piece of paper.[21]

The Restatement Third of Property (Mortgages) Section 5.4(c) provides that "a mortgage may only be enforced by or on behalf of a person who is entitled to enforce the obligation."[22] American Jurisprudence, Second Edition provides that "only the rightful owner of the note has the right to enforce the mortgage."[23]

Courts in other jurisdictions have reached the same conclusion: *Merritt v. Bartholick* ("As a mortgage is but an incident to the debt which it is intended to secure . . . the logical conclusion is that a transfer of the mortgage without the debt is a nullity, and no interest is assigned by it. This is a necessary legal conclusion, and recognized as the rule by a long course of judicial decisions.");[24] *Vidal v.*

---

[21] 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 37.27[2] at 37-178 (Michael Allan Wolf ed., 2000).

[22] RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4(c) (1997). Section 5.4(a) states "A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise." This "the mortgage follows the note" principle is supported by substantial authority. Section 5.4(b) states "Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise." The Reporter's Note acknowledges that there is "substantial contrary authority, holding that an assignment of the mortgage without the obligation is a nullity."

[23] 55 AM. JUR. 2D *Mortgages* § 584 (2017).

[24] 36 N.Y. 44 (1867) (internal citations omitted).

*Liquidation Properties, Inc.* ("We have held that the one who owns or holds the note is entitled to foreclose on the mortgage.");[25] *Bank of New York v. Raftogianis* ("As a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt.");[26] *Deutsch Bank National Trust v. Brumbaugh* ("Appellee must demonstrate it is a person entitled to enforce the note.");[27] *Bankers Trust Company of California, N.A. v. Vaneck* ("The [Conn.] statute codifies the common law principle of long standing that 'the mortgage follows the note,' pursuant to which only the rightful owner of the note has the right to enforce the mortgage.");[28] *In re Atlantic Mortgage Corporation v. Adamo* ("In Michigan law, a mortgage which has been severed from the corresponding promissory note does not entitle the mortgage holder to collect the indebtedness or to take possession of the real property.");[29] *Deutsche Bank National Trust Company, Trustee, v. Holden* ("Deutsche Bank must still show that it is the holder of the note that establishes the debt in order to foreclose.");[30] *South Carolina National Bank v. Halter* ("The assignment of a mortgage as distinct from the debt it secures is nugatory and confers no rights upon

---

[25] 104 So.3d 1274, 1276 (Fla. Dist. Ct. App. 2013).
[26] 13 A.3d 435, 438 (N.J. Super. Ct. Ch. Div. 2010).
[27] 270 P.3d 151, 153 (Okla. 2012).
[28] 899 A.2d 41, 42 (Conn. App. Ct. 2006).
[29] 69 B.R. 321, 325 (Bankr. E.D. Mich. 1987).
[30] 60 N.E.3d 1243, 1250 (Ohio 2016).

the transferee, absent some indication that the parties also intended to transfer the debt."); [31] *McKeighan v. Citizens Commercial & Savings Bank of Flint* ("The assignment of the mortgage by Schlee, the mortgagee, to Selenik, after Schlee had indorsed the mortgage note over to the bank, was a nullity.");[32] *Walston v. Twiford* ("A mortgage which purports to secure the payment of a debt has no validity if the debt has no existence.").[33]

We find these authorities persuasive and consistent with our observation in *Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corporation* that a debt is an essential requisite to a mortgage. [34] The logic of the rule that the holder of a mortgage must have the right to enforce the underlying obligation in order to foreclose on the mortgage is clear. That is why the Delaware mortgage foreclosure statute requires the mortgagor "to show cause, if there is any, why the mortgaged premises ought not to be seized and taken in execution for payment of the mortgage money with interest . . . ."[35] If the holder of the mortgage is not the one entitled to enforce the underlying debt ("mortgage money"), the mortgage holder suffers no injury by the mortgagor's nonperformance.

---

[31] 359 S.E.2d 74, 77 (S.C. Ct. App. 1987) (internal citations omitted).
[32] 5 N.W.2d 524, 526 (Mich. 1942).
[33] 105 S.E.2d 62, 64 (N.C. 1958).
[34] 25 A.2d 383 (Del. 1942).
[35] 10 *Del. C.* § 5061(a).

For the foregoing reasons, we hold that a mortgage holder must be a party entitled to enforce the obligation, mortgage money, which the mortgage secures in order to foreclose on the mortgage.

We also believe that a claim that a mortgage holder is not entitled to foreclose on the mortgage because it is not the party entitled to enforce the underlying obligation falls within the scope of a plea in avoidance. It relates to the plaintiff's legal ability to foreclose on the mortgage. It admits the essential allegations of the complaint but asserts a matter which, if true, defeats the plaintiff's right to foreclose.

The mortgage was assigned to The Bank in 2011. In 2013, two years after the mortgage was assigned, Mr. Shrewsbury requested and obtained from the company servicing the mortgage a copy of the note. The copy he received contained no notation or indication that the note had been assigned. The Shrewsburys asserted their defense in their answer and in their response to the motion for summary judgment. In the Superior Court, it appears that The Bank did not produce the note, claim to be the holder of the note, or claim to be entitled to enforce the note. Under these circumstances, a question of fact existed which should have resulted in denial of The Bank's motion for summary judgment until it showed that it had the right to enforce the note.

We do not view the holding we reach in this case as imposing new pleading

13

requirements which must be contained in a mortgage foreclosure complaint. 10 *Del. C.* § 5061 has not been interpreted as requiring an averment concerning the note. The Superior Court Civil Rules include an appendix of approved forms. Form 13 illustrates, in its simplest form, a sufficient mortgage foreclosure complaint, subject to the various requirements found in other statutes enacted after the form was adopted. The second paragraph of the form of complaint is an allegation that "Defendant owes plaintiff the principal amount of the mortgage with interest from _____." That form must be construed in accordance with the language of the statute. Therefore, the second paragraph of the form should be read: "the defendant owes the principle amount of the mortgage money with interest . . ."[36]

The complaint in this case alleged that "Defendant(s) owe to plaintiff the principal sum of the amount remaining on the mortgage with interest . . ." Our ruling simply recognizes that one of the possible pleas in avoidance of this allegation is that the money is not owed to the plaintiff because it does not have the right to enforce the debt which the mortgage secures. We also note that where a mortgage has been assigned, plaintiff's counsel is free, if counsel chooses, to expand the averment that the mortgage has been assigned to include an averment that the note,

---

[36] We recommend that the Superior Court consider amending the form to specifically say "mortgage money" rather than just "mortgage."

14

as well as the mortgage, was assigned to the plaintiff. In fact, the best practice would be for the plaintiff's counsel to do so.

For the foregoing reasons, the judgment of the Superior Court is reversed and the matter is remanded for further proceedings consistent with this opinion.[37]

---

[37] The dissent characterizes the Majority's opinion as being based upon sympathy, and cautions against "mandating as judges, not legislators, an increase in the costs to lenders of enforcing their rights when that is not necessary to protect the legitimate rights of borrowers." Yet, the Dissent acknowledges that the Majority "might have a point where an unfortunate homeowner could have her home foreclosed upon by a mortgage holder and later have a separate note holder show up and demand payment." But that is exactly the point. Our Dissenting colleague would force upon such a homeowner the costs of chasing down the mortgage holder and suing to establish that the note had already been paid. To the extent that decisions of this Court are contrary to our holding herein, they are hereby overruled.

**STRINE**, Chief Justice, dissenting:

Although I understand and respect the approach my friends in the Majority take to address the difficult problem this case presents, I respectfully disagree with their conclusion about what the foreclosure statute requires and would affirm the Superior Court's well-reasoned orders resolving this case.[38] In this case, however sympathetic we may be to anyone facing foreclosure, the Shrewsburys have been living in a house for nearly seven years without making any mortgage payments, and one thing is therefore clear, that they are in no equitable position to continue to occupy the house, as they now owe in excess of $800,000 including unpaid principal, interest, and late charges,[39] according to The Bank, and have not even so much as made any good faith payment on the mortgage since July 2010.[40] There are, of course, complexities to the current mortgage system, but those complexities have also increased the pool of capital funding affordable mortgages for ordinary

---

[38] The Superior Court's decision accords with its earlier decisions on this topic that holding the mortgage was sufficient to confer standing on a foreclosing plaintiff. *See, e.g.*, *Deutsche Bank National Trust Company v. Moss*, 2016 WL 355017, at *1, *2 (Del Super. Jan. 26, 2016), *aff'd sub nom. Moss v. Deutsche Bank National Trust Company*, 148 A.3d 1170, 2016 WL 5660265 (Del. Sept. 30, 2016) (TABLE) (finding foreclosing plaintiff had standing to foreclose because it held validly assigned mortgage); *HSBC Mortgage Corp. (USA) v. Bendfeldt*, 2014 WL 600233, at *2 (Del. Super. Feb. 4, 2014), *aff'd sub nom. Bendfeldt v. HSBC Mortgage Corp. (USA)*, 2014 WL 4978666 (Del. Oct. 7, 2014) (same).

[39] Appellant's Corrected App. at A69 (Complaint, Ex. D § 5062D(b)(2) Affidavit in Support of Amounts Due (Docket No. 1, C.A. No. N15L-03-108)).

[40] *Id*. at A24 (Complaint (Docket No. 1, C.A. No. N15L-03-108)).

16

Americans. We should be careful about mandating as judges, not legislators, an increase in the costs to lenders of enforcing their rights when that is not necessary to protect the legitimate rights of borrowers. Costs that are above what is truly necessary to protect borrowers from inequitable conduct by lenders will be ultimately borne by all borrowers and especially the vast bulk of those who prudently borrow and make their loan payments. Because 10 *Del. C.* § 5061's language plainly allows foreclosure by the mortgage holder, I would not, by judicial act, add the requirement that a bank must also prove it owns the note.

The mortgage that the Shrewsburys executed states that if the Shrewsburys failed to pay their obligations when due, the loan would be in default, and the lender could accelerate the remaining sum due and foreclose on the property. The mortgage also states "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) Interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [escrow]."[41]

Delaware recognizes both statutory and equitable foreclosure methods.[42] Here, The Bank used the statutory method. 10 *Del. C.* § 5061 provides: "[s]ubject to the provisions of §§ 5062A, 5062B, 5062C and 5062D . . . upon breach of the

---

[41] App. to Appellee's Answering Br. on Appeal at B6 (Mortgage).
[42] *Monroe v. Metropolitan Life Ins. Co.*, 457 A.2d 734, 736 (Del. 1983).

condition of a mortgage of real estate . . . the mortgagee's heirs, executors, administrators, successors or assigns may . . . sue out of the Superior Court [corresponding to the property's location] a writ of scire facias upon such mortgage . . . ."[43] Actions based on *scire facias* writs for mortgages have a long history in Delaware and receive extensive treatment in Woolley's *Practice in Civil Actions*. Woolley says that plaintiffs in a *scire facias sur* mortgage action "should have a legal interest in the mortgage sued upon."[44] Additionally, *scire facias* actions in general are "founded upon a record, the record in [*scire facias sur* mortgage], of course, being the mortgage."[45]

The language of § 5061 also supports the idea that holding the mortgage is sufficient to confer standing. Section 5061 only refers to mortgagors and mortgagees and doesn't refer to a note or note holder. Other parts of the Delaware Code, including other parts of Title 10, acknowledge the existence of notes as distinct from mortgages.[46] The General Assembly could have referred to both or only note holders if it so desired, especially against a backdrop of invoking a writ with an extensive history of use for *in rem* proceedings. This is especially true

---

[43] 10 *Del. C*. § 5061.
[44] WOOLLEY, *supra* note 5, at 919.
[45] *Id*. at 918.
[46] *E.g.*, 10 *Del. C.* § 3912.

given that the General Assembly amended § 5061 in 2012 to add a series of provisions protecting homeowners in foreclosure proceedings.[47]

Thus, we are faced with a situation where the most natural reading of the statute as well as the history of the action codified in it identify the mortgage holder as the person who is entitled to bring a foreclosure action, *not* the person holding *both* the note and mortgage. The Shrewsburys argue that allowing foreclosure based only on a mortgage opens the door to a dire scenario where an unfortunate homeowner could have her home foreclosed on by a mortgage holder and later have a separate note holder show up and demand payment. Were that a likely or even plausible result, the Shrewsburys might have a point. But, the reality is that homeowners in the Shrewsburys' position are well protected against double collection.

For one thing, the mortgage itself provides that all payments have to be applied to the interest and principal due "under the Note."[48] Thus, a mortgage holder would be obligated to put any money it receives from a judgment sale toward

---

[47] The 2012 amendment added provisions mandating that defendants in foreclosure actions "must have an opportunity to apply for relief under a federal loss mitigation program," 10 *Del. C.* § 5062A, must receive specific information about foreclosures, *id.* § 5062B, have the right to pre-foreclosure mediation, *id.* § 5062C, and also required foreclosure complaints to contain statements of how the foreclosing plaintiff complied with the new provisions, *id.* § 5062D.

[48] App. to Appellee's Answering Br. on Appeal at B6 (Mortgage).

satisfaction of the note. For another thing, the statute protects the homeowners. 10 *Del. C.* § 5067, which is part of the Delaware Code's subchapter on *scire facias sur* mortgage states "any surplus of the proceeds of sale of mortgaged premises, after satisfying the principal debt in the mortgage, with interest and costs, shall be rendered to the owner of the premises at the time of sale. Until the surplus is so rendered, the officer making the sale shall not be discharged upon the record of the court to which the sale is returnable."[49] So, the sheriff who was appointed by the Superior Court to conduct the sale is responsible for ensuring the proceeds go to satisfy the mortgage debt. Finally, in Delaware, any foreclosure proceedings occur under judicial supervision and so a homeowner in the Shrewsburys' situation could always raise the defense of satisfaction of the mortgage in a future proceeding.[50]

The Majority also may introduce unnecessary complication into the way the Superior Court will analyze its jurisdiction in future cases like this one. The Shrewsburys' argument all along has been that The Bank's inability to produce the note was a defect in The Bank's standing. The Shrewsburys' characterization of the issue, if not their ultimate conclusion, is correct. "The issue of standing is

---

[49] 10 *Del. C.* § 5067.
[50] Indeed, this State requires mortgagees to update mortgage records within sixty days of the mortgage's satisfaction, 25 *Del. C.* § 2111, and also provides a procedure to compel mortgagees to enter satisfaction if they otherwise fail to do so, *id.* § 2115.

concerned 'only with the question of *who* is entitled to mount a legal challenge and not with the merits of the subject matter in controversy.'"[51] My friends in the Majority, though, state that their holding does not impose "new pleading requirements which must be contained in a mortgage foreclosure complaint"[52] and, instead, it is up to the defendant to assert that a foreclosing plaintiff is not entitled to foreclose because the plaintiff lacks the note. But, this sits uncomfortably with the normal proposition that "[t]he party invoking the jurisdiction of a court bears the burden of establishing the elements of standing."[53] That is, if the Majority's position is correct, to establish standing, the foreclosing plaintiff should be obliged to plead that it holds both the mortgage and the note. And, because any defendant faced with a complaint that does not do this will invoke the Majority's decision and ask for dismissal for the failure of the plaintiff to do so, the Majority rule will in fact by necessity drive the form of foreclosing plaintiffs' pleadings. The Majority acknowledges this when they urge counsel for foreclosing plaintiffs to include "an averment that the note, as well was the mortgage, was assigned to the plaintiff."[54] And, the only evidence the Shrewsburys here cited that The Bank did not possess

---

[51] *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (quoting *Stuart Kingston, Inc. v. Robinson,* 596 A.2d 1378, 1382 (Del. 1991)).
[52] Majority Op. at 15.
[53] *Dover Historical Soc.*, 838 A.2d at 1109.
[54] Majority Op. at 15–16.

21

the note was a version of the note from 2013, almost two years before the foreclosure complaint was filed. Because notes like these are freely transferable, if this is evidence sufficient to meet a defendant's burden to provide a factual basis that the foreclosing plaintiff does not hold the note, then the practical burden of the Majority's rule is on a foreclosing plaintiff to plead this affirmatively. If these are the practical realities flowing from the Majority's decision, it is probably best for all concerned to state this and to require a foreclosing plaintiff to plead the required elements up front so that the delays that have resulted in this case do not ensue in future cases.[55]

---

[55] The litigation that continues to be generated in this area suggests another possible reality. It could be that the perpetuation of procedural practices that were designed at a time in our history when capital markets and commercial practices were far different is inefficient. In a year that would have been the subject of science fiction in the period when the print was still fresh on the first edition of *Woolley's*, it is likely not optimal to continue using a writ lawyers often refer to as "sci fi" and other procedural practices and writs no longer fit to purpose. A comprehensive look at statutory and rule provisions to simplify and make plain what is required would likely aid all parties to disputes like this, and in other important areas of law such as landlord-tenant disputes, where cases involving someone's ability to avoid eviction can turn on whether there was a narrowly defined error on the face of the record allowing a party to invoke a writ with a Latin name.